**PENGUIN BOOKS USA INCORPORATED; Jeffrey R. Toobin, Plaintiffs–Appellees,**

v.

**Lawrence E. WALSH; Office of Independent Counsel, Defendants–Appellants.**

**No. 1297, Docket 91–7131.**

United States Court of Appeals, Second Circuit.

Argued March 7, 1991.

Decided March 27, 1991.

Guy Miller Struve, Davis, Polk & Wardwell, New York City (Seth Richard Lesser, Michael D. Vhay, of counsel), for defendants-appellants.

Robert H. Baron, Cravath, Swaine & Moore, New York City (Brooks R. Burdette, Augustine V. Cheng, Andrew W. Hayes, Cravath, Swaine and Moore, Aaron R. Marcu, Howard Darby & Levin, New York City, of counsel), for plaintiff-appellee Toobin.

Martin Garbus, Frankfurt, Garbus, Klein & Selz, New York City, for plaintiff-appellee Penguin Books USA.

Before KAUFMAN, KEARSE and PRATT, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Faced with proliferating caseloads and essentially static resources, our nation's courts engage in a struggle to assure litigants their rightful day in court. Actions that undermine orderly procedures squander precious public resources and contribute to what is fast becoming a crisis of epic proportions. When parties invoke the judicial process and secure favorable declaratory relief—receiving a court's imprimatur to engage freely in what otherwise might be characterized as dubious behavior—it is not unreasonable to expect them to postpone further their conduct until their opponent has been afforded the safeguard of appellate review. Basic notions of fairness dictate that successful litigants who render moot an appeal will not receive our assistance in insulating district court decisions from scrutiny.

We are presented with a dispute concerning the publication of a book that provides an inside account of the investigation and prosecution of Lt. Col. Oliver North for his

involvement in what has come to be known as the "Iran–Contra" affair. In the proceedings below, Judge Keenan entered a declaratory judgment stating that publication of *Opening Arguments: A Young Lawyer's First Case—United States v. Oliver North*, authored by Jeffrey R. Toobin and published by Penguin Books USA, Inc. ("Penguin"), would not violate any fiduciary or contractual duties owed by Toobin to Independent Counsel (and former federal judge) Lawrence E. Walsh and the Office of Independent Counsel ("OIC"), the entity charged with prosecuting Iran–Contra.

After the appeal was scheduled, but before oral argument was heard, plaintiffs-appellees Toobin and Penguin decided to publish *Opening Arguments*, notwithstanding the obvious risk of mootness. Because we are of the view that publication of Toobin's book eliminates the controversy before us, we dismiss the appeal as moot, vacate the lower court order and remand with directions to dismiss the complaint.

## BACKGROUND

The instant proceedings concern Jeffrey Toobin's activities in connection with the publication of his book, *Opening Arguments*. In January 1987, Toobin was hired by Judge Walsh to serve as Associate Counsel to the OIC team prosecuting North, thereby affording him access to highly confidential insights and materials regarding the proceedings. While employed by the OIC, Toobin signed several non-disclosure agreements obligating him to keep confidential certain information he acquired during the investigation. In particular, at the beginning of his term, Toobin signed three documents which required him to preserve grand jury secrets and to submit for review all classified or classifiable information prior to its dissemination. In addition, on May 4, 1989, the day he left the OIC, Toobin signed an agreement which provided that he would not, without written approval, divulge "[i]nvestigative material compiled by [the OIC] which relates directly/indirectly to this investigation and its sources, both U.S. and foreign."

Despite this, during his tenure at the OIC, Toobin accumulated twenty-two spiral binders containing thousands of pages of notes taken during internal OIC meetings. And, after terminating his employment, he retained as many additional pages of working documents, including memoranda written by Judge Walsh and other documents revealing investigation strategies and results. Toobin made use of these materials in writing *Opening Arguments*.

Just prior to his departure, Toobin informed Judge Walsh that he planned to write a book concerning his experiences at the OIC. Two weeks later, Toobin submitted for approval a portion of the manuscript for his proposed book. In response, Guy Miller Struve, Judge Walsh's second in command at the OIC, wrote Toobin, objecting to the inclusion of internal material in his draft. Toobin in turn protested that no law or privilege barred discussion of all inter-office business, even when the material had not previously been publicly disclosed.

For the next several months, Toobin continued to submit to Walsh drafts of completed chapters; and, the OIC consistently registered its disapproval in general terms. Several letters from Struve indicated his belief that many of the passages contained office confidences and violated Federal Rule of Criminal Procedure Rule 6(e) pertaining to grand jury secrecy. Two installments were also sent to the CIA for review.

In March 1990, after the CIA had cleared the material for publication, Toobin sent Walsh a final draft. The following month, Judge Walsh advised the Department of Justice that it should take "all appropriate administrative steps with respect to the dissemination and threatened publication" of Toobin's book. The Counsel for Intelligence Policy at the Justice Department, Mary C. Lawton, found "only one instance of classified information" and declined to take any action against Toobin.

In October 1990, Walsh and Struve drafted a proposed letter to Hal Lieberman, Chief Counsel of the First Appellate Division of the New York State Supreme Court

Departmental Disciplinary Committee, concerning Toobin, a member of the New York State bar. The letter stated that they believed dissemination and impending publication of *Opening Arguments* violated Toobin's legal responsibilities under Disciplinary Rule 4–101 of the Code of Professional Responsibility, regarding preservation of client secrets and confidences. Though the letter was never sent to the Disciplinary Committee, it eventually reached the desk of Toobin's current employer, Andrew J. Maloney, the United States Attorney for the Eastern District of New York.

## PROCEEDINGS BELOW

In November 1990, Toobin and Penguin commenced a lawsuit in federal court for the Southern District of New York. They sought injunctive relief against further harassment by appellants and a declaratory judgment that publication of *Opening Arguments* did not violate either *Fed.R. Crim.P.* 6(e) or any other legal obligation owed by Toobin to appellants.

Following a trial on the merits, at which only Toobin testified, Judge Keenan granted the declaratory relief requested by Toobin and Penguin, but denied their request for a permanent injunction barring future government interference with publication of *Opening Arguments*.

The day after Judge Keenan's decision, February 1, 1991, appellants' request for an expedited appeal was granted by this Court, and argument was scheduled for March 7. In the interim, however, it came to our attention that *Opening Arguments* had been published and widely circulated before this Court had an opportunity to hear arguments or pass on the merits of the appeal from the district court judgment.

## DISCUSSION

Since the claims before us were initially based on conduct not yet undertaken, jurisdiction was premised on the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Congress established the declaratory judgment procedure so that parties who were uncertain of their rights could adjudicate their claims without first engaging in dubious conduct.

■ Our ability to pass on the future rights and relations of parties, however, is not without significant constitutional and statutory limits. A federal court lacks the power to render advisory opinions and the authority "to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). When attempting to define the problem of mootness in the context of a declaratory judgment action, the Supreme Court explained that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Moreover, the dispute must exist at all stages of review. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).

With these principles in mind, we turn our attention to the proceedings before us. Upon instituting this action for declaratory relief, Penguin and Toobin asserted that the prospect of future legal action chilled their determination to publish *Opening Arguments*. Despite their concerns, however, they proceeded to publish *Opening Arguments* before we had an opportunity to pass on appellants' claims of error.

■ In light of these circumstances, we cannot escape the conclusion that the publication and wide distribution of *Opening Arguments* has mooted this appeal. By publishing, appellees vitiated any potential chilling of their expression. And, though it may be claimed that the OIC may still be eager to prosecute Toobin and Penguin, it has referred enforcement authority to the Department of Justice, which, so far, has shown no inclination to pursue either criminal or civil proceedings. Thus, the likelihood of future prosecution, against which

Toobin sought protection, is substantially diminished, if not non-existent. Moreover, Toobin has given us his assurance in open court that he will not make further use of the approximately five thousand pages of OIC documents still in his possession. In deciding that this case must be dismissed for mootness, we do not express any view on the merits or the propriety of the district court's conclusions.

Since this case has become moot on appeal, we are left to determine the proper disposition of the district court's judgment and opinion. The leading case in this area is *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). In *Munsingwear*, the United States sought injunctive relief and damages for alleged violations of a price-fixing ordinance. By agreement of the parties, the claim for damages was held in abeyance pending determination of the injunction action. The district court found Munsingwear's commodity pricing did not violate the regulation. While the government's appeal was pending, however, a change in regulations decontrolled the pricing of certain goods. Accordingly, the appeal was dismissed as moot upon Munsingwear's motion.

The government subsequently sought to prosecute the damages action and Munsingwear moved to dismiss, raising the district court's earlier decision as *res judicata*. The court granted Munsingwear's motion and the Court of Appeals for the Eighth Circuit affirmed. The Supreme Court, after noting that the "established practice" for cases that become moot on appeal is to vacate the lower court order with directions to dismiss the complaint, left standing the lower court judgment. The key to the Court's holding was the government's failure to request *vacatur*.

In the instant proceeding, neither party briefed the mootness issue or requested *vacatur*, though publication of *Opening Arguments* in late February must have apprised them of potential problems with the posture of this case. In any event, since mootness has been raised *sua sponte*, we retain discretion over the continuing effect of Judge Keenan's opinion. *See,*

*e.g., Beneficial Finance of Kansas, Inc. v. United States*, 459 U.S. 1081, 103 S.Ct. 562, 74 L.Ed.2d 927 (1982); *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722–23 (9th Cir. 1982); *Wirtz v. Local Unions 410, 410A, 410B & 410C, Int'l Union of Operating Engineers*, 366 F.2d 438, 442 (2d Cir.1966).

■ Courts contemplating how to exercise their discretion often look to the source of mootness. *See, e.g., United States v. Garde*, 848 F.2d 1307 (D.C.Cir. 1988). When circumstances beyond an appellant's control render moot a question decided and appealed from, a federal appellate court will generally vacate the decision below, *see Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979), notwithstanding the exception articulated in *Munsingwear*. The rationale is that a judgment from which litigants have the right of appeal should not be accorded preclusive effect when events beyond their control prevent them from exercising that right. *Id.* at 93–94, 99 S.Ct. at 2149–50.

This interest is especially pronounced when actions of winning litigants serve to deny their adversaries the opportunity to appeal. Under these circumstances it may amount to an abuse of discretion not to vacate the lower court order. Were it otherwise, appellees could deliberately moot cases on appeal, thereby shielding erroneous decisions from reversal. *See Wisconsin v. Baker*, 698 F.2d 1323, 1330–31 (7th Cir.), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983); *Federal Trade Commission v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir.1977). Approval of such a strategy would render the bizarre result that judgments mooted on appeal would have greater preclusive effect than cases susceptible of review.

■ Accordingly, we decline to exercise our discretion to leave standing the decision below. We find it significant that Toobin and Penguin, who prevailed in the district court, unilaterally acted to publish the book, thereby causing the case to become moot. Because appellees voluntarily removed from us the power to make any

decision in this matter, thus depriving appellants of their statutory right to review, we decline to depart from "the standard disposition in federal civil cases." *Munsingwear*, 340 U.S. at 39 n. 2, 71 S.Ct. at 106 n. 2. Were we to maintain the district court judgment, we would be sanctioning conduct which manipulates procedure so as to make lower court judgments both binding and unreviewable. This, we are not willing to do.

For these reasons, the appeal is dismissed on the ground of mootness. The judgment of the court below is vacated and the case is remanded with directions to dismiss the complaint.