Clarence E. NORMAN, Jr., Angelo Del Toro, David F. Gantt, the New York State Assembly and Saul Weprin, Plaintiffs,

v.

Mario M. CUOMO, Stan Lundine, the Fund for Accurate and Informed Representation, Inc., Juan De Sanctis, Augustine C. Chen, Onel Afari, Aurelia Greene, and James F. Brennan, Defendants.

No. 92–CV–720.

United States District Court, N.D. New York.

June 15, 1992.

Graubard Mollen Horowitz Pomeranz & Shapiro, New York City (C. Daniel Chill, of counsel), for plaintiffs.

Baker & Hostetler, Washington, D.C. (E. Mark Braden, Frederick W. Chockley, Stephen B. Nix, of counsel).

Baden Kramer Huffman Brodsky & Go, New York City (William M. Brodsky, of counsel), for defendants Fund for Accurate and Informed Representation, Juan De Sanctis, Augustine C. Chen and Onel Alfaro.

Robert Abrams, Atty. Gen. State of N.Y., New York City (Joel Graber, Asst. Atty. Gen., of counsel), for defendants.

Wolfson & Carroll, New York City (John W. Carroll, of counsel), for defendant James Brennan.

Before CARDAMORE, Circuit Judge, McCURN, Chief District Judge and MUNSON, Senior District Judge.

## MEMORANDUM AND ORDER OF THREE–JUDGE COURT

PER CURIAM.

Before the court is yet another lawsuit prompted by New York State's recent legislation setting forth new state Assembly and Senate district boundaries. *See* 1992 N.Y. Laws ch. 76–78. The controversial legislation has thus far supplied the impetus for at least five separate lawsuits, three of which (including the instant suit) have been assigned to this three-judge panel. *See Fund for Accurate and Informed Representation, Inc. v. Weprin,* No. 92–CV–283 (N.D.N.Y.) (filed Mar. 3, 1992) (the

"*F.A.I.R.*" action) (challenge limited to the apportionment of Assembly seats only); *Scaringe v. Marino,* 92–CV–593 (N.D.N.Y.) (filed May 7, 1992) (Senate and Assembly seats); *Wolpoff v. Cuomo,* No. 14757–1992 (N.Y.Sup.Ct., Bronx Cty.) (filed May 8, 1992) (Senate apportionment);[1] *Dixon v. Cuomo,* No. 13266/92 (N.Y.Sup.Ct., N.Y. Cty.) (filed May 14, 1992) (Senate apportionment). The partisan battle comes before the court today on plaintiffs' motion to remand this case to New York State Supreme Court and defendants' motion to consolidate this action with *F.A.I.R.* For the reasons discussed herein, plaintiffs' motion to remand is denied and defendants' motion to consolidate is granted. In addition, the court *sua sponte* dismisses all of plaintiffs' claims arising under state law.

## I.

Plaintiffs commenced this declaratory judgment action in New York State Supreme Court, Kings County, on April 22, 1992, seeking a declaration that the state's newly-enacted Assembly reapportionment plan (hereinafter the "plan") comports with the Fourteenth and Fifteenth Amendments to the United States Constitution, the federal Voting Rights Act, and the New York State Constitution. Defendants subsequently removed the case to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1441, 1443, 1446 (1988 & West Supp. 1992). After removing the case, defendants moved to transfer venue to this district, where this three-judge court had already been empaneled in a suit involving nearly identical issues between many of the same parties. *See Fund for Accurate and Informed Representation, Inc. v. Weprin,* No. 92–CV–283. Perhaps coincidentally, on the same day that defendants moved to transfer, plaintiffs filed a motion to remand

the case to state supreme court pursuant to 28 U.S.C. § 1447(c) (1988). On March 28, 1992, Judge Nickerson of the Eastern District of New York reserved decision on that remand motion and, over plaintiffs' objection, granted defendants' motion to transfer the case to this district.[2]

Significantly, resolution of the issues presented turns in large part upon the interplay between this action and the *F.A.I.R.* action. As will become increasingly apparent, *F.A.I.R.* and the present action, with one significant exception (discussed *infra*), are mirror images of each other. The plaintiffs in *F.A.I.R.* allege that the Assembly is *not* presently apportioned—nor is the newly-enacted plan apportioned—in compliance with the United States Constitution, the Federal Civil Rights Act, and the Voting Rights Act of 1965. *See* Memorandum–Decision and Order, *Fund for Accurate and informed Representation, Inc. v. Weprin,* No. 92–CV–283 (N.D.N.Y. May 28, 1992) (per curiam). The plaintiffs in *F.A.I.R.* ask the court (1) to enjoin the defendants from administering or supervising Assembly elections in the Assembly districts as presently apportioned, and (2) to redistrict the New York State Assembly in a manner that satisfies federal constitutional and statutory requirements. It is important to note that the plaintiffs therein do not allege that the district lines violate New York State constitutional or statutory law. After various procedural modifications and rulings by this court, the *F.A.I.R.* action is now driven by plaintiff's third-amended complaint.

The instant suit was commenced by (among others) some of the same individuals who are defendants in the *F.A.I.R.* action. In this action, those individuals seek an order declaring that the Assembly redis-

---

**1.** On June 12, 1992, the court in *Wolpoff* ruled (1) that the newly-enacted Senate plan is unconstitutional, and (2) that this finding necessitated a ruling that the Assembly plan, as enacted, is unconstitutional. The court did not rule on the merits of the Assembly plan, however, thus leaving the effect of its ruling *vis-a-vis* the Assembly plan uncertain.

**2.** Plaintiffs petitioned to the Court of Appeals for a writ of mandamus which essentially sought reversal of the transfer to this district. The Second Circuit summarily rejected plaintiffs' petition and affirmed the transfer to this district. Chief Judge Oakes of the Second Circuit subsequently appointed this three-judge court to adjudicate the action pursuant to 28 U.S.C. § 2284 (1988).

tricting plan complies with the United States Constitution, the federal Voting Rights Act, and the New York State Constitution. Such a declaration is requested and, according to plaintiffs, necessary because the defendants have "all made clear that they believe that the Senate and Assembly Redistricting Legislation in respect of the Assembly lines violates [federal constitutional and statutory law and state constitutional law]." Complaint ¶¶ 13, 16, 19, 22. Thus, it is clear that the issues raised herein generally parallel those raised in the *F.A.I.R.* action.

In addition to the obvious similarity of issues, a review of the roster of parties reveals just how intertwined these two suits really are. There are eight defendants in the present case,[3] four of the whom, *i.e.* De Sanctis, Chen, Alfaro, and The Fund for Accurate and Informed Representation, Inc. (collectively "F.A.I.R."), are plaintiffs in the *F.A.I.R.* action. In their answer, these four defendants acknowledge their belief that the reapportionment plan is infirm on both state and federal grounds, but do not assert counterclaims. Of the four remaining defendants, two, *i.e.* New York Governor Cuomo and Lt. Governor Lundine, are also defendants in the *F.A.I.R.* action. The last two defendants, Greene and Brennan, are members of the New York State Assembly. In other words, the four "non-F.A.I.R." defendants (Cuomo, Lundine, Greene and Brennan) are members of the political apparatus which promulgated the apportionment plan at issue in this litigation.

On May 19, 1992, with this case still pending in state supreme court, F.A.I.R.—including defendants De Sanctis, Chen, and Alfaro—filed a petition of removal to federal court. The non-F.A.I.R. defendants did not join the removal; in fact, Cuomo, Lundine, and Greene have actually expressed their opposition to the removal. Chill Aff. (5/20/92) at ¶ 17. The procedural posture that has emerged can be most succinctly summarized as follows: Four defendants, those collectively referred to as F.A.I.R.,

participated in the removal of this case to federal court. The other four defendants did not join in or otherwise consent to the removal. The plaintiffs oppose the removal and move for a remand.

## II.

Plaintiffs raise numerous arguments to support their motion to remand. Their arguments will be addressed *seriatim*, followed by a brief discussion of F.A.I.R.'s motion to consolidate this case with *F.A.I.R.*

## A.

Plaintiffs' primary argument for remand rests on their contention that defendants' removal to federal court was procedurally defective, in that not all of the defendants consented to the removal. The basis for this argument stems from the language of the applicable removal statute, 28 U.S.C. § 1441(a), which states in pertinent part that

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Numerous courts, including the Second Circuit, have construed this statute as generally requiring the consent of all defendants to effect a proper removal. *See, e.g.,* *Bradford v. Harding,* 284 F.2d 307, 309 (2d Cir.1960) (Friendly, J.); *Brown v. Demco, Inc.,* 792 F.2d 478, 481 (5th Cir.1986); *Bellone v. Roxbury Homes, Inc.,* 748 F.Supp. 434, 436 (W.D.Va.1990) (citing cases). Since four of the eight defendants in this case did not join in the removal—in fact, three apparently oppose the removal—plaintiffs urge that the removal to federal court was improper and the case should

---

**3.** This suit was originally brought against fifteen defendants. On May 18, 1992, one day before some of the defendants filed their notice of

removal to federal court, plaintiffs discontinued this action against seven of the defendants, thus leaving the eight defendants described herein.

therefore be remanded to state court pursuant to 28 U.S.C. § 1447(c).

The requirement that all defendants consent to removal carries some pivotal exceptions, however. Most notably, "[n]ominal parties ... are disregarded for removal purposes and need not join in the petition [to remove]." *Northern Ill. Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 272 (7th Cir.1982) (citations omitted). The breadth of this rule is undisputed; courts uniformly recognize that defendants seeking to remove a case to federal court need not obtain the consent of defendants who are nominal to the suit. *E.g., Farias v. Bexar Cty. Bd. of Trustees,* 925 F.2d 866, 871 (5th Cir.), *reh'g denied,* 931 F.2d 892 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991); *Hewitt v. City of Stanton,* 798 F.2d 1230, 1232 (9th Cir. 1986); *Avon Prods., Inc. v. The A/J Partnership,* 1990 WL 422416 * 2, 1990 U.S.Dist. LEXIS 2186 * 6–7 (S.D.N.Y. Mar. 1, 1990) (citations omitted). *See also* 14A Charles A. Wright, et al., Federal Practice and Procedure § 3731 (1985).

F.A.I.R. contends that consent of the other defendants to removal was unnecessary because they are mere nominal parties to this litigation. Resolution of this dispute therefore depends upon whether the defendants who did not join in the removal are nominal parties. The burden of establishing a party's nominal status rests upon F.A.I.R., as the defendant that is seeking removal. *See, e.g., Northern Illinois Gas Co.,* 676 F.2d at 273; *see also Hofmann v. Fasig–Tipton N.Y., Inc.,* No. 90–CV–1074, 1991 WL 5867 *4, 1991 U.S.Dist. LEXIS 715 *10–11 (N.D.N.Y. Jan. 15, 1991) (Munson, J.) (diversity of citizenship context). F.A.I.R. can satisfy its burden by demonstrating that the non-consenting defendants, despite their presence in the suit,

simply cannot afford the desired relief to the plaintiffs. *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.,* 521 F.Supp. 1046, 1048 (S.D.N.Y.1981), *aff'd,* 710 F.2d 87 (2d Cir.1983); *Avon Prods.,* 1990 U.S. Dist. LEXIS 2186 *9. That is to say, a party is considered nominal if "no cause of action or claim for relief is or could be stated against him or on his behalf...." *Saxe, Bacon & Bolan, P.C.,* 521 F.Supp. at 1048; *accord, e.g., Farias,* 925 F.2d at 871.

The allegations set forth in plaintiffs' complaint, especially when viewed in conjunction with the relief sought in *F.A.I.R.,* indicate that the four non-consenting defendants are nominal to this suit and thus their consent is not required for removal. This conclusion is compelled in part by the relief sought in this case. Plaintiffs merely seek a declaration that the Assembly districts as currently drawn comply with state and federal law and that the Fall, 1992 elections should proceed according to the new reapportionment plan. *See* Complaint at ¶¶ 14–15. No other specific relief is sought.

Standing alone, of course, a statement of the relief sought does not shed light on whether the non-consenting defendants are nominal. When one additionally considers that the non-consenting defendants have not taken steps that conflict with plaintiffs' position, however, their nominal status becomes abundantly clear. As F.A.I.R. accurately points out, none of the non-consenting defendants have sought judicial intervention to obstruct implementation of the Assembly plan, nor have they manifested any intention to block the plan's administration during the fall election. The non-consenting defendants, for example, are not plaintiffs in the *F.A.I.R.* action and do not assert any counterclaims in the instant action.[4] In short, they have asserted no

---

4. On June 12, 1992, the court received what purports to be an answer and counterclaim from defendant Brennan. In his counterclaim, Brennan seeks (1) a declaration that the plan is invalid under the federal and state constitutions, and (2) $550,000.00 in compensatory and punitive damages.

Because the complaint was hand-delivered to Brennan on May 5, 1992 (*see* Glaser Aff.

(5/5/92)), this responsive pleading is time barred. Under Fed.R.Civ.P. 81(c),

the defendant shall answer or present the other defenses or objections available under these rules *within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after service of summons upon such initial pleading, then filed, or

factual or legal basis for obstructing elections in accordance with the newly-enacted plan. To be sure, defendant Cuomo (and vicariously defendant Lundine), by signing the reapportionment legislation into law, fulfilled an indispensable role in the plan's enactment and are defendants in the *F.A.I.R.* action to enjoin effectuation of the plan. Given the non-consenting defendants' failure to assume a legal position that is hostile to plaintiffs' position, the court is hard-pressed to conceive of how a declaration against them would provide relief in any manner to these plaintiffs.

Plaintiffs believe that non-consenting defendants Greene and Brennan are more than "nominal" parties to this litigation: that belief is based upon the fact that Greene and Brennan cast dissenting votes to the plan legislation and have otherwise been outspoken in their opposition to the plan. Indeed, Greene has apparently threatened legal action to bar implementation of the plan. According to plaintiffs, Greene's and Brennan's well-known opposition to the plan, including their dissenting votes in the Assembly, creates an adversarial relationship that renders Green and Brennan more than "nominal" to this suit.

Plaintiffs' presumption runs contrary to the requirement that a suit must present an actual case or controversy in order to be justiciable in federal court. U.S. Const. art. III; *Babbitt v. United Farm Wrkrs. Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). If a party is not involved in the actual case or controversy, then surely it is a nominal party, *see Saxe, Bacon & Bolan, P.C.*, 521 F.Supp. at 1048, because the constitution's cases and controversies limitation "forecloses the conversion of courts of the United States into judicial versions of college debating forums." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70

L.Ed.2d 700 (1982). A mere dispute of policy does not transform a nominal party into one involved in a legitimate case or controversy. Their political disagreement notwithstanding, Greene and Brennan have taken no formal steps to impede the election according to the plan. Furthermore, plaintiffs' contention that Greene might assert some legal position against the plan in the future is unavailing; the court cannot speculate as to what might happen under hypothetical circumstances. Since Greene and Brennan have manifested no more than their disagreement over the newly-enacted plan, a declaration against them simply would not affect plaintiff's rights or otherwise further their interests.

The nominal role of the non-consenting defendants in this suit becomes especially clear when contrasted to the role played by the removing defendants, *i.e.* F.A.I.R. Unlike the non-consenting defendants, F.A.I.R. has formally asserted a legal position adverse to these plaintiffs and, through the companion *F.A.I.R.* suit, has taken affirmative steps to block execution of the plan. A declaration of validity against F.A.I.R. would settle the active dispute between these two parties by collaterally estopping F.A.I.R.'s efforts to hamper the election process. A declaration against the non-consenting defendants, by comparison, would carry no comparable legal force.

The net effect of the foregoing analysis is that a declaration against the non-consenting defendants would not affect plaintiffs' rights or otherwise promote their interests. Thus, no cause of action or claim for relief is stated against them. *Cf., e.g., Lewis v. Continental Bank Corp.*, 494 U.S. 472, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990) ("Article III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)). By defini-

within 5 days after the filing of the petition for removal, whichever period is longest. *See also* Fed.R.Civ.P. 13(a) (responsive pleading must include all counterclaims arising out of the same transactions or occurrences as the original claim). Based upon Brennan's May 5

receipt of the complaint, his responsive pleading falls well beyond the permissible time frame for responsive pleadings set forth in Rule 81(c). Therefore, the court cannot consider Brennan's pleading in reviewing these motions.

tion, therefore, the non-consenting parties are nominal to this lawsuit. *E.g. Saxe, Bacon & Bolan*, 521 F.Supp. at 1048.

In sum, the non-consenting defendants' failure to manifest any intent to obstruct the upcoming elections means that a declaration of the plan's validity against them would be inconsequential; a judgment against the non-consenting defendants would not afford plaintiffs with any cognizable relief. The non-consenting defendants are therefore nominal parties in this suit, meaning that their consent to removal was not necessary. Accordingly, plaintiffs' motion to remand based upon this procedural argument is rejected.

### B.

Plaintiffs' second argument in support of remand can be dismissed in short order. Plaintiffs contend that the statute under which F.A.I.R. purported to remove this suit, 28 U.S.C. § 1443, is not applicable in cases such as the present. Plaintiffs are ignoring one obvious fact: F.A.I.R. also asserts 28 U.S.C. §§ 1441 and 1446 as bases for removal, which provide a proper avenue for removal independent of § 1443. Since removal was proper on these alternative grounds anyway, the court need not resolve the question of whether removal pursuant to § 1443 would also have been appropriate in this case.

### C.

■ The court can reject plaintiffs' third argument in similar fashion. Plaintiffs contend that removal was improper because F.A.I.R. failed to append a short and plain statement of the grounds for removal to their removal petition, as required by 28 U.S.C. § 1446(a).[5] After plaintiffs filed their motion to remand, F.A.I.R. cured that defect by supplying an amended petition to remove which satisfies all of the § 1446 requirements. Under circumstances nearly identical to the present, the Seventh Circuit

instructed that "[a] removal petition may be amended freely within the thirty day period" following removal so as to allow the removing party to justify the failure of all defendants to join in the removal. *Northern Ill. Gas Co.*, 676 F.2d at 273. Although not binding on this court, the Seventh Circuit's reasoning in *Northern Ill. Gas Co.* remains persuasive and uncontroverted.

F.A.I.R.'s amended petition asserts, *inter alia*, that the non-contesting defendants are nominal to the case and therefore need not consent to the removal, and that removal is warranted due to the "important federal questions at issue" and to facilitate consolidation of this case with *F.A.I.R.* By advancing these justifications, F.A.I.R. discharged all of the requirements set forth in § 1446 and as interpreted in *Northern Ill. Gas Co.* Therefore, plaintiffs' motion to remand on this basis is without merit.

### D.

■ Although not stated as a specific basis for relief, a theme that resonates throughout plaintiffs' papers is the notion that the state supreme court is a more appropriate forum for adjudication over the issues presented in this case. Plaintiffs' argument implicitly invokes the provision set forth in 28 U.S.C. § 1441(c), which furnishes this court with the discretion to remand "all matters in which State law predominates." Plaintiffs argue that a remand is appropriate here because their suit raises issues that are of independent concern to New York State, such that resolution of these matters by a state tribunal is necessary to the furtherance of state sovereignty.

In so arguing, plaintiffs invoke federalism principles which the court cannot ignore. Federal courts must occasionally abstain from adjudication of state claims in favor of allowing the state's tribunals an opportunity to develop a coherent state pol-

---

**5.** 28 U.S.C. § 1446(a) states:

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and

division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal....

icy with respect to issues of local concern. *E.g. De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir.1989) (Cardamone, J.) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–34, 63 S.Ct. 1098, 1098–1108, 87 L.Ed. 1424 (1943)). In the particular context of the removal statute, the court is mindful of the Second Circuit's admonition that

> [i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.

*Somlyo v. J. Lu–Rob Enter., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991) (citing, *e.g.*, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941)).

On the other hand, the court must be equally cognizant of defendants' countervailing statutory right to remove to federal court cases based upon federal rights. *See* §§ 1441, 1443. The rationale behind removing a case to federal court may be especially acute in cases such as the present, in which a local court may face parochial and political pressure from its own citizens. By enacting the removal statutes, Congress ensured that a defendant's right to vindicate federal civil rights in a federal forum remains secure. *See Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 195 (6th Cir.1990); *Worthy v. Schering Corp.*, 607 F.Supp. 653, 657 (E.D.N.Y.1985).

Any tension that might ordinarily exist between these seemingly conflicting rights is absent from the present case, however, because review of the record reveals that this suit is conspicuously devoid of a legitimate—let alone predominant—state question. At most, plaintiffs' claim under the state constitution seeks a declaration concerning a matter that is not truly in controversy. Specifically, plaintiffs merely plead that the newly-drawn Assembly districts comply with the New York State Constitution and that defendants have expressed their disagreement with this proposition. Then, with little substantiation, plaintiffs

assert that "by reason of the foregoing, a controversy exists requiring a judicial declaration." Complaint ¶ 23. Plaintiffs allege that a judicial declaration is required to avoid upsetting the orderly scheduled Assembly elections set for Fall, 1992.

The court is at a complete loss as to why a declaration concerning the validity of the state constitutional issue would facilitate an orderly election process. Neither in this action nor in any other action of which we are aware have these defendants asserted that the New York State Constitution affords them with a basis for affirmative relief. That is to say, in no instance do these defendants place reliance upon constitutional state law to "upset the orderly scheduled elections set for this Fall." At most, defendants have merely acknowledged in their answer their disagreement as to the validity of the Assembly reapportionment plans under the state constitution. The central focus of defendants' own litigation efforts in other lawsuits has been on the *federal* constitutionality of the Assembly districts. The parties' disagreement on the state constitutional question hardly elevates the state law claim to a level that can be considered "predominant."

The posture of this litigation is such that resolution of plaintiffs' state law claim for a declaratory judgment would not affect the rights of any of the parties to this suit. We find that plaintiffs' cause of action arising under state law not only fails to raise a predominant state question to justify a remand, but also fails to raise a case or controversy sufficient to confer upon this court jurisdiction to adjudicate that claim. *See, e.g., Babbitt*, 442 U.S. at 297–98, 99 S.Ct. at 2308–09; *Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir.1991) (citing *Rice*, 404 U.S. at 246, 92 S.Ct. at 404). Accordingly, the court denies plaintiffs' motion to remand this case to state supreme court and, as we are obligated to do, *sua sponte* dismisses plaintiffs' claim arising under state law. *See, e.g., Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986).

### E.

F.A.I.R. asks the court to consolidate the present action with *F.A.I.R.*, which is scheduled for a trial on the merits on June 24, 1992. Consolidation seems appropriate because, with the exception of the state constitutional issue presented herein, the two cases raise identical issues and surely would entail identical proof. Plaintiffs' sole basis for opposing consolidation is their belief that this suit should not even be tried in this court but rather should be adjudicated in a state forum. For the reasons stated above, however, the court rejects plaintiffs' motion to remand. Therefore, despite plaintiffs' desire to the contrary, the present case will be adjudicated in this court. Since the court has been given no legitimate argument against consolidation and consolidation presents the most efficient tack on which to proceed, the motion to consolidate this case with *F.A.I.R.* is granted.

### III.

Plaintiffs' motion to remand this case to state supreme court is denied with prejudice. Plaintiffs' cause of action arising under New York State law is dismissed with prejudice. This case is hereby consolidated with *Fund for Accurate and Informed Representation, Inc. v. Weprin*, No. 92–CV–283, and shall therefore proceed in accordance with same scheduling order.

IT IS SO ORDERED.