ASSOCIATED GENERAL CONTRACTORS OF CONNECTICUT, INC. and Drywall Associates, Inc., Plaintiffs–Appellees,

v.

**CITY OF NEW HAVEN, Defendant–Appellant,**

**B & T Contractors, Inc., Intervenor–Defendant.**

No. 444, Docket 94–7316.

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1994.

Decided Nov. 23, 1994.

---

Michael N. Lavelle, Pullman & Comley, Bridgeport, CT, for plaintiffs-appellees.

Aileen M. Bell, Deputy Corp. Counsel, City of New Haven, New Haven, CT, for defendant-appellant.

Before: WINTER, JACOBS and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Plaintiffs-appellees brought this action for injunctive and declaratory relief, alleging that appellant's "set-aside" program for public contract awards, enacted as "Chapter 12¼" of the New Haven Municipal Code, violated their right to equal protection of the laws guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983.[1] The district court entered summary judgment in plaintiffs' favor, declaring that the ordinance violated the Equal Protection Clause. 791 F.Supp. 941 (D.Conn.1992). The City of New Haven appeals.

The threshold question presented is whether this appeal is moot because Chapter 12¼ expired in July 1993 and has not been reenacted. Because we believe that this appeal is indeed moot, we must decide whether

---

1. 42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

the decision of the district court should be vacated.

## BACKGROUND

The City of New Haven enacted the Equal Opportunity Ordinance in 1964, as Chapter 12½ of the New Haven Municipal Code. Chapter 12½ made "general findings of discrimination against people of color in employment, housing, access to credit, public accommodations, equality of association, and general enjoyment of constitutional rights. The ordinance established the Commission on Equal Opportunities and a procedure for filing complaints of discrimination." *Minority and Women's Participation in the New Haven Construction Industry: A Report to the City of New Haven,* (Jaynes Associates), Jan. 19, 1989, at 11–12. Chapter 12½ was amended in 1977 to create a fifteen percent set-aside preference for minority business enterprises ("MBEs").[2] In 1983, the City amended Chapter 12½ again, creating a preference for women business enterprises ("WBEs")[3] for six percent of municipal contracts.

In January 1989, the Supreme Court decided *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). The *Croson* Court invalidated Richmond's policy of setting aside a certain percentage of construction subcontracts for MBEs, holding that municipal, race-based affirmative action programs are subject to strict scrutiny. *Id.* at 493, 109 S.Ct. at 721 ("The [strict scrutiny] test ... ensures that the means chosen 'fit' th[e] compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate racial prejudice or stereotype.") (strict scrutiny found to apply by five Jus-

tices—the plurality and Justice Scalia); *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 274, 106 S.Ct. 1842, 1847, 90 L.Ed.2d 260 (1986) (plurality opinion) (holding that racial classification must be narrowly tailored to serve a compelling government interest). Under that stringent standard, the Court discredited Richmond's evidentiary basis for the set-aside plan, ruling that the City neither documented specific acts of discrimination in its construction industry nor established a relevant statistical comparison illustrating the present effects of past discrimination. *Croson,* 488 U.S. at 498–505, 109 S.Ct. at 724–27.

In light of *Croson,* New Haven decided to review its set-aside ordinance, Chapter 12½. In June 1989, the New Haven Board of Aldermen created the Aldermanic Special Committee to determine whether sufficient evidentiary support existed for the ordinance. Approximately a year later the Special Committee issued its report, which concluded that a compelling need for a subcontracting set-aside program still existed. The Committee also recommended, however, that the program last only two years, during which time the Board's Contract Compliance Subcommittee would study current information to determine whether the program should be continued. On July 5, 1990, the City adopted Chapter 12¼, which directs construction contractors or developers to make "maximum practicable efforts to insure that four (4) percent of the construction costs [where they exceed $75,000] shall be set aside for subcontractors which are certified as [WBEs], and that ten (10) percent of the construction costs shall be set aside for subcontractors which are certified as disadvantaged business enterprises [DBEs]."[4]

---

2. Chapter 12½–25 provided as follows:

> A. Construction contracts in excess of $200,000 will utilize minority owned firms to a dollar percentage of not less than 15% or ½ the percentage of the minority population of the City of New Haven, where such firms are available for work.

3. In 1983, the New Haven Board of Aldermen defined a "WBE" as a "[b]usiness enterprise of which more than 50% of the voting shares or interest in the business is owned, controlled, and operated by individuals who are women and with respect to which more than 50% of the net profit

or loss attributable to the business accrues to shareholders who are women." Chapter 12¼, which amended Chapter 12½ in 1990, defined a "WBE" as "an enterprise (i) which is owned by one or more women, (ii) which is controlled by one or more women who own it, and (iii) which is located in the State of Connecticut."

4. Chapter 12¼ defined a DBE as an enterprise which is

> (i) owned by one or more disadvantaged individuals;
> (ii) controlled by one or more disadvantaged individuals who own it; and

Significantly, Chapter 12¼ contained a three-year sunset provision for the set-asides and provided that the New Haven Commission on Equal Opportunities "shall ... [p]rovide for the collection and analysis of relevant data regarding participation by [MBEs] and [WBEs] in the public and private sector construction industry in New Haven.... The commission shall report the results of this study no later than April 1992 to the board of aldermen, who shall act no later than September 1992 to amend this chapter as it relates to disadvantaged utilization goals, if necessary."

On June 26, 1989, appellee, Associated General Contractors of Connecticut, Inc. ("AGC"), challenged the constitutionality of Chapter 12½ of the New Haven Municipal Code.[5] After the City adopted Chapter 12¼, the AGC filed an amended complaint on September 25, 1990, seeking declaratory and injunctive relief with respect to this latest set-aside legislation. On May 4, 1992, the district court entered summary judgment in favor of plaintiffs, declaring Chapter 12¼ unconstitutional in light of *Croson.* 791 F.Supp. 941 (D.Conn.1992). Although the district court did not award injunctive relief, the City ceased enforcing Chapter 12¼ after the decision.

The City appealed the decision, but then, when it became apparent that the district court had failed to enter final judgment, entered into a stipulation with plaintiffs pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure.[6] Under the stipulation, the City agreed to withdraw the appeal without prejudice to renewal. The City then moved for entry of final judgment in the district court on October 27, 1992; on November 4, 1992, plaintiffs filed a motion to correct the judgment. The district court en-

(iii) located in the State of Connecticut.
African Americans and Hispanic Americans were rebuttably presumed to be disadvantaged. Others could be certified as disadvantaged based on their color, national origin, physical handicap, or "long-term isolation from the mainstream of American society·beyond the individual's control." Section 12¼–2(r).

5. Appellee Drywall Associates, Inc. joined the litigation as a plaintiff on September 29, 1989.

6. Rule 42(b) provides:

tered an amended and final judgment on August 11, 1993, over a month after the set-aside program would have expired by its own terms had it not been declared unconstitutional in May 1992. Notice of this appeal was filed on March 17, 1994.

## DISCUSSION

### A.

Mandated by Article III's "case or controversy" requirement, the mootness doctrine prevents federal courts from hearing matters that no longer present an actual dispute between parties. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Bragger v. Trinity Capital Enter. Corp.,* 30 F.3d 14 (2d Cir.1994) (defendants' appeal of judgment approving settlement between plaintiffs and other defendants rendered moot when district court dismissed claims against non-settling defendants-appellants). A case can become moot at any stage of litigation, though the burden on the party alleging mootness is a "heavy" one. *See Harrison & Burrowes Bridge Constructors v. Cuomo,* 981 F.2d 50, 59 (2d Cir.1992) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)).

■ Appellees argue that this case became moot while the appeal was pending because Chapter 12¼'s set-aside plan—Section 12¼–5, entitled "Utilization Goals"—expired on July 5, 1993. They rely on *Burke v. Barnes,* 479 U.S. 361, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987), where the Supreme Court held the case moot because the bill at issue had expired while the appeal was pending. In response, appellant asserts that this case fits into the exception to the mootness

If the parties to an appeal or other proceeding shall sign and file with the clerk of the court of appeals an agreement that the proceeding be dismissed, specifying the terms as to payment of costs, and shall pay whatever fees are due, the clerk shall enter the case dismissed, but no mandate or other process shall issue without an order of the court. An appeal may be dismissed on motion of the appellant upon such terms as may be agreed upon by the parties or fixed by the court.

doctrine for cases where the defendant voluntarily ceases to engage in the challenged practice yet is free to resume it.[7] The Supreme Court applied this exception in *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982), where it held the case not moot because the City of Mesquite was likely to reenact the ordinance that it repealed while the case was pending.

■ Relying on *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, — U.S. —, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), appellant argues that the case is not moot. *Northeastern Florida*, however, can be distinguished from the circumstances presented here. In *Northeastern Florida*, the City of Jacksonville had repealed its set-aside ordinance after the Supreme Court had granted certiorari, but enacted a similar ordinance the very next day. The Court found the *Aladdin's Castle* exception applicable and thus held the case was not moot. In so holding, the Court relied on the fact that "[t]here is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; *it has already done so.*" *Northeastern Florida*, — U.S. at —, 113 S.Ct. at 2301 (emphasis added). In contrast, the City of New Haven did not repeal Chapter 12¼ to avoid an adverse judgment and it has not reenacted Chapter 12¼ or a similar provision. Even if we enter the realm of speculation about whether the City will enact a new plan, we may safely assume that any such plan will be supported by updated statistical data and therefore be subject to attack and justification on different and additional grounds. This probability counsels in favor of a finding of mootness. For if New Haven is unlikely to reenact Chapter 12¼ on the same statistical evidence—Chapter 12¼ was based in part on a statistical study conducted from June 1989–May 1990 analyzing the success of WBEs and MBEs through 1988—there is no point in our undertaking an exhaustive analysis of that evidence.

In the context of race-based set-asides, *Croson* makes clear that the constitutionality of any municipal plan is inextricably linked to its factual justification. Under *Croson*, a race-based set-aside must be narrowly tailored to serve a compelling government interest. *Croson*, 488 U.S. at 492–94, 109 S.Ct. at 721–22. In order to meet this standard, the City of New Haven must show that discriminatory practices have affected the local construction industry. "[A]n amorphous claim that there has been past discrimination in a particular industry cannot justify the use of an unyielding racial quota." *Id.* at 499, 109 S.Ct. at 724.

A city will be hard-pressed under *Croson* to justify a race-based set-aside plan if it is unable to offer fairly current statistics demonstrating the effects of past discriminatory practices. Indeed, New Haven itself recognized the need to make current the factual basis for Chapter 12¼ by including a three-year sunset provision and by directing the Commission on Equal Opportunities to collect and analyze relevant data during the first two years of Chapter 12¼'s operation in order to determine whether the ordinance should be amended or reenacted. In sum, the Supreme Court's decision in *Croson* makes it unreasonable to expect that Chapter 12¼ will be reenacted without an updated factual predicate.

Under the standard set forth in *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), a case is moot when "it can be said with assurance that

7. In arguing against a finding of mootness, the City states further that this case is "capable of repetition." Appellant's Reply Br. at 4. *See Schall v. Martin*, 467 U.S. 253, 256 n. 3, 104 S.Ct. 2403, 2405 n. 3, 81 L.Ed.2d 207 (1984) (citation omitted) (holding that pretrial detention case is "capable of repetition, yet evading review"). The instant case is not of the kind that "evad[es] review." Had final judgment properly been entered in May 1992, this court would have heard this appeal before the set-aside plan expired. The duration of New Haven's plan was not inherently shorter than the time it would generally take to reach our court for review. This matter therefore will not consistently evade review, and can be readily distinguished from those cases that are paradigmatically "capable of repetition, yet evading review." *See, e.g., First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978) (holding case not moot because any challenged referendum would almost certainly be submitted to voters before matter fully litigated).

there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383 (citations and internal quotations omitted). Because we cannot reasonably expect Chapter 12¼ or a similar set-aside plan to be reenacted without an updated factual predicate, and because appellees were not adversely affected by such a plan after the district court declared Chapter 12¼ unconstitutional, we find this case moot.[8]

### B.

■ Having declared this case moot, we consider the proper disposition of the district court's judgment declaring Chapter 12¼ unconstitutional. The Supreme Court recently addressed how to treat a judgment after the case becomes moot on appeal in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, —— U.S. ——, ——, 115 S.Ct. 386, 391, 130 L.Ed.2d 233 (1994). In *U.S. Bancorp*, the parties had settled the case after the Supreme Court had granted certiorari; the parties agreed that the case was thus moot. On these facts, the Court held that vacating the Court of Appeals' judgment was improper, reasoning that the equitable principle favoring vacatur when a case is mooted "through happenstance," *see United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 n. 2, 71 S.Ct. 104, 106 n. 2, 95 L.Ed. 36 (1950) (collecting cases), did not apply. Instead, the Court held that "mootness by reason of settlement does not justify vacatur of a judgment under review." *U.S. Bancorp*, —— U.S. at ——, 115 S.Ct. at 393.

*U.S. Bancorp* does not upset our rule that it is the duty of an appellate court to vacate a district court judgment when the matter becomes moot on appeal, unless "actions attributable to one of the parties" rendered the

appeal moot or the district court judgment "had already been subjected to appellate scrutiny to which the losing party was entitled." *Bragger*, 30 F.3d at 17; *see also U.S. Bancorp*, —— U.S. at ——, 115 S.Ct. at 390 ("The parties in the present case agree that vacatur must be decreed ... where a controversy presented for review has 'become moot due to circumstances unattributable to any of the parties.'") (citing *Karcher v. May*, 484 U.S. 72, 83, 108 S.Ct. 388, 395, 98 L.Ed.2d 327 (1987)). The rationale behind this rule providing for vacatur rests on basic notions of fair play and justice: A party should not suffer the adverse *res judicata* effects of a district court judgment when it is denied the benefit of appellate review through no fault of its own. *See Bragger*, 30 F.3d at 17 ("By eliminating the judgment that has become moot the rights of all the parties are preserved."). This rationale is especially compelling when the party that prevailed in the district court seeks to moot the appeal, *see Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 73 (2d Cir.1991), but it also applies when "circumstances beyond an appellant's control render moot a question decided and appealed from." *Id.*

In the instant case, the circumstances were to a large extent beyond appellant's control, because the district court failed to enter final judgment until after Chapter 12¼ expired. The City had filed a timely notice of appeal on July 10, 1992, but the appeal had to be withdrawn once it became evident that the district court had not entered judgment with respect to all the parties. On October 27, 1992, the City filed a motion for entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure so that it could pursue its appeal. Yet the district court did not enter final judgment until August 11, 1993, over a month after Chapter 12¼ ex-

---

**8.** Our decision in *Harrison & Burrowes*, 981 F.2d at 58–59, is instructive. There, we held that the district court did not abuse its discretion in dismissing a case as moot where a New York state agency promulgated an emergency regulation suspending enforcement of a set-aside program pending the development of a factual record necessary to support it. The finding of mootness was based in part on the fact that "New York appears to be on a course to develop those findings—previously lacking—to support its set-aside programs." *Id.* at 59. While the City of New Haven has not announced to this court an intention to update the factual predicate for Chapter 12¼, we infer such an intention, in the event the City chooses to reenact the ordinance, from the provisions in Chapter 12¼ providing for the collection of recent data and for the set-aside plan's termination after three years.

68

pired. Thus, as a technical matter, this case was moot before proceedings were even completed in the district court, despite appellant's efforts. Under these circumstances, vacating the district court judgment "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *Munsingwear*, 340 U.S. at 40, 71 S.Ct. at 107.

### C.

 The final issue presented is the status of appellees' motion for attorney's fees in light of our holding that the district court judgment must be vacated. Because the district court reserved decision on appellees' motion pending appeal, we do not have jurisdiction to decide whether appellees were "prevailing parties" under 42 U.S.C. § 1988(b) (Supp. IV 1992). *See Davet v. Maccarone*, 973 F.2d 22, 31 (1st Cir.1992) ("Since the district court has yet to decide the issue of section 1988 fees, there is no final, appealable order pursuant to 28 U.S.C. § 1291."); *Rum Creek Coal Sales, Inc. v. Caperton*, 971 F.2d 1148, 1155 (4th Cir.1992) ("Any analysis of the propriety of attorney's fees on our part absent a final determination by the district court would be inappropriate."). We therefore remand this case to the district court for a determination whether appellees are entitled to attorney's fees as the "prevailing parties" under 42 U.S.C. § 1988(b).[9]

### CONCLUSION

For the reasons stated above, the judgment of the district court is vacated and the case is remanded with directions to dismiss this action after deciding appellees' motion

9. At oral argument, the City of New Haven contended that it would be unfair to permit an award of attorney's fees when a case is declared moot on appeal. In remanding this matter to the district court, we note that this court has stated that "mootness . is not determinative as to the propriety of an award of attorney's fees.... 'The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a "prevailing party."'" *Larouche v. Kezer*, 20 F.3d 68, 75 (2d Cir.1994) (quoting *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir.1980),

for reasonable attorney's fees under 42 U.S.C. § 1988(b).

*cert. denied*, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981)); *see also Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir.1980) ("Claims for attorneys' fees ancillary to the case survive independently ... and may be heard even though the underlying case has become moot."), *cert. denied*, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979) (holding case moot but also upholding district court finding that state employee was prevailing party in district court and entitled to attorney's fees).