In the Matter of the Appeal of Colleen RUSSMAN, a Child With Disabilities, by Her Parents, Patricia and Paul RUSSMAN, Plaintiffs,

v.

BOARD OF EDUCATION OF the ENLARGED CITY SCHOOL DISTRICT OF the CITY OF WATERVLIET, Defendant.

No. 93–CV–905.

United States District Court, N.D. New York.

June 30, 1995.

Disabilities Law Clinic of Albany Law School, Albany, New York, for Plaintiff (Nancy M. Maurer, Lisa Schreiner and Louis Maslow, II Law Interns, of counsel).

Hicks & Bailly, Albany, New York, for Defendant (Stephen F. Bailly, of counsel).

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

Colleen Russman, a student residing in the Watervliet School District, has been identified as mentally retarded since 1986; and, until 1991, she was placed in a variety of

segregated public educational programs. In the Spring of 1991, her parents requested that the Committee on Special Education ("CSE") develop an Individualized Educational Program ("IEP") which would allow Colleen to be "mainstreamed"—*i.e.*, included in a "regular" classroom setting. The further desire of the Russmans, to have this IEP implemented at St. Brigid's Regional Catholic School, is at the core of the controversy in this case.

The IEP developed by the CSE provided for the services of a consultant teacher and a teaching aide [1], as well as on-site speech and occupational therapy. The parties agree that such an inclusion program is appropriate for Colleen and that, in order for this program to be successful, the services set forth in the IEP must be provided. Nevertheless, the provision of the consultant teacher and teaching aide [2] *at a sectarian location* was ultimately denied by the CSE, based upon its determination that such services would violate the Establishment Clause of the First Amendment to the U.S. Constitution.

As a result, plaintiff commenced the instant action, claiming that this denial of services violates: (1) Section 1413 of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; (2) New York Education Law § 3602–C; and (3) the Free Exercise Clause of the First Amendment to the U.S. Constitution. Both parties consented to proceed before Magistrate Judge Ralph W. Smith (with an election to appeal to the district judge) and an Order of Reference was signed and filed by this Court on April 18, 1994. Subsequently, by Memorandum–Decision and Order dated June 22, 1994 ("MDO"), Magistrate Judge Smith denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment—finding that the provision of the services of a consultant teacher and a teaching aide at St. Brigid's would violate both federal law, *i.e.*, 34 C.F.R. § 76.532(a)(1) [3], and the Establishment Clause. Presently before this Court is plaintiff's appeal of the judgment entered in accordance with this MDO.

■ "The standard applied by a reviewing court to determine whether summary judgment was properly granted is the same as that applied by the [lower] court initially under Rule 56(c)." [4] *Burtnieks v. City of*

---

1. This IEP provides for consultant teacher services for ½ hour per day of direct assistance in reading, math, and language arts, and ½ hour per day of indirect consultation with the classroom teacher regarding modification of test and classroom assignments for reading, English, spelling, penmanship, math, social studies, science, and health. The IEP also provides for a teaching aide to give "support teaching" to Colleen in reading, English, spelling, penmanship, math, social studies, science, and health.

2. The parties agree that the speech and occupational therapy may properly be provided at St. Brigid's.

3. 34 C.F.R. § 76.532(a)(1) states:
   (a) No State or subgrantee [*i.e.*, local school district] may use its grant or subgrant to pay for any of the following:
   (1) Religious worship, instruction, or proselytization.

4. Pursuant to the standard set forth in Fed. R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In deciding such a motion, the Court is not to resolve disputed issues of fact, but rather, to assess whether a genuine issue regarding a material fact remains for the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc.*, 844 F.2d 955, 959 (2d Cir.1988), *cert. denied* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The record is assessed in a light most favorable to the non-movant, and all reasonable inferences are drawn in the non-movant's favor. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). A non-movant who bears the ultimate burden of proof, however, must demonstrate that there is *some* evidence which would create a genuine issue of material fact. *See Twin Laboratories, Inc. v. Weider Health and Fitness*, 900 F.2d 566, 568 (2d Cir.1990). This evidence cannot be "conclusory allegations," *id.*, or "mere speculation," *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990), but rather something more

*New York,* 716 F.2d 982, 985 (2d Cir.1983) (citing C. Wright, A. Miller & M. Kane, 10 *Fed.Prac. & Proc.* § 2716 (2d ed. 1983)).

■ One of the basic tenets of this standard is that "[c]redibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions [or the trier-of-fact at trial], not those of a judge ... ruling on a motion for summary judgment[.]" *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. In reaching his decision, however, Magistrate Judge Smith made numerous findings of fact material to the law as he applied it.

■ Regarding his determination that federal law would be violated, the Magistrate Judge found that "the evidence does not support [plaintiff's] assertion that '(r)eligious themes are specifically addressed only in a separate religion class[,] [and] there is no religious content to any of the courses or activities for which Colleen requires assistance pursuant to her IEP[;] *[but] [r]ather, it is clear from the transcripts and exhibits submitted that religious instruction is included in the various academic classes at St. Brigid's.* MDO, p. 5 (quoting plaintiff's Rule 10(j) Statement at ¶ 20) (emphasis added). In reaching this conclusion, he found "incredibl[e]" the testimony of St. Brigid's principal, Ms. Ana Yeomans, "that there is no religious aspect to teaching courses other than religion," *id.* at 6, and found further that her "contradict[ory]" and "inconsisten[t]" testimony did not warrant a denial of summary judgment due to an issue of material fact. *Id.* at 7. However, although the evidence may overwhelmingly favor a finding that religious instruction is included in the various academic classes at St. Brigid's, Yeomans' testimony did create a factual dispute

*material* to the law as applied by Magistrate Judge Smith.

Moreover, in finding that the Establishment Clause would be violated, he found that

> here we are dealing with a teacher and a teaching aide who have to modify the **content** of the academic classes for Colleen. *I do not agree with plaintiffs' characterization of the consultant teacher and the aide as mere interpreters of the course materials.*

*Id.* at 12 (first emphasis in original, other emphasis added).

These findings supported his further determination that "by requiring the consultant teacher to modify the academic classes for Colleen, and by requiring the teaching aide to give direct individual teaching support to Colleen in subjects which have religious content, they would be furthering the religious mission of the school." *Id.* at 13.

However, the resolution of the underlying factual disputes which support such a determination is not a function of a judge on a motion for summary judgment. Accordingly, the summary judgment in favor of defendant must be reversed.

■ In addition, this Court is not in agreement with the Magistrate Judge's interpretation of the applicable law: under a recent Supreme Court decision, the finding that religious instruction is included in academic course of St. Brigid's is irrelevant to the present Establishment Clause issue. That decision, relied on by both parties to support their opposing opinions, and the case upon which Magistrate Judge Smith based his decision regarding the Establishment Clause, was issued in the recent Supreme Court case of *Zobrest v. Catalina Foothills School District,* 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993)[5]. In *Zobrest* the Supreme Court

than a "scintilla of evidence", *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), and more than "some metaphysical doubt as to the material facts": *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). "Furthermore, summary judgment cannot be avoided by immaterial factual disputes". *Howard v. Gleason Corp.,* 901 F.2d at 1159.

5. In *Zobrest,* the Supreme Court acknowledged that § 76.532—the regulation upon which Magistrate Judge Smith found a violation of federal law—does not create a separate regulatory limitation on the IDEA, but "merely implements the Secretary of Education's understanding of (and thus is coextensive with) the requirements of the Establishment Clause." *Zobrest,* 509 U.S. at 7, n. 7, 113 S.Ct. at 2465, n. 7. In other words, § 76.532 is merely a regulation "'based on the Department's interpretation of [the] constitution-

held that a public school district did not violate the Establishment Clause by providing a sign-language interpreter under the IDEA to a deaf student in a parochial school "in order to facilitate his education." *Id.,* 509 U.S. at 14, 113 S.Ct. at 2469.

In reaching this holding, the Supreme Court first recognized that it had "consistently held that government programs that neutrally provide benefits to a broad class of citizens defined without reference to religion are not readily subject to an establishment clause challenge just because sectarian institutions may also receive an attenuated benefit." *Id.,* 509 U.S. at 8, 113 S.Ct. at 2466. Two factors support such a holding: (1) the program's benefits are " 'made available generally without regard to the sectarian-nonsectarian, or public-nonpublic nature of the institution benefited[,]' " *id.* at 10, 113 S.Ct. at 2467 (quoting *Witters v. Washington Dep't of Services for Blind,* 474 U.S. 481, 487, 106 S.Ct. 748, 751, 88 L.Ed.2d 846 (1986)) [6]; and (2) " '[a]ny aid provided under [a] program that ultimately flows to religious institutions does so only as a result of the genuinely independent and private choice of aid recipients[,] ... [as a result,] [t]he program ... creates no financial incentive for students to undertake sectarian education.' " *Id.* (quoting *Witters,* 474 U.S. at 487–88, 106 S.Ct. at 751–52) [7].

As in *Zobrest,*

[t]hat same reasoning applies with equal force here. *The service at issue in this case is part of a general government program that distributes benefits neutrally to any child qualifying as "handicapped" under the IDEA, without regard to the "sectarian-nonsectarian, or public-nonpublic*

al requirements[,]' " authorized by the Secretary's general rulemaking power, and providing no greater constraint than the Establishment Clause upon which it is based. *Id.* (citations omitted) Thus, the Supreme Court went on to consider the violation of that constitutional clause rather than a specific violation of the regulation. This Court will do the same.

**6.** *See also Mueller v. Allen,* 463 U.S. 388, 398, 103 S.Ct. 3062, 3068–69, 77 L.Ed.2d 721 (1983) (the provision of the program's benefits to a broad spectrum of families—"whether their chil-

*nature" of the school the child attends. By according parents freedom to select a school of their choice, the statute ensures that a government-paid [consultant teacher and teaching aide] will be present in a sectarian school only as a result of the private decision of individual parents.* In other words, because the IDEA creates no financial incentive for parents to choose a sectarian school, [the consultant teacher or teaching aide's] presence there cannot be attributed to state decisionmaking. Viewed against the backdrop of *Mueller* and *Witters,* then, ... *[w]hen the government offers a neutral service on the premises of a sectarian school as part of a general program that "is in no way skewed towards religion," Witters,* supra, at 488, 106 S.Ct., at 752, *it follows under our prior decisions that provision of that service does not offend the Establishment Clause.* See *Wolman v. Walter,* 433 U.S. 229, 244, 97 S.Ct. 2593, 2603, 53 L.Ed.2d 714 (1977). Indeed, this is an even easier case than *Mueller* and *Witters* in the sense that, under the IDEA, *no funds traceable to the government ever find their way into sectarian schools' coffers.* The only indirect economic benefit a sectarian school might receive by dint of the IDEA is the handicapped child's tuition—and that is, of course, assuming that the school makes a profit on each student; that, without an IDEA [consultant teacher and teaching aide], the child would have gone to school elsewhere; and that the school, then, would have been unable to fill that child's spot.

*Zobrest,* 509 U.S. at 10, 113 S.Ct. at 2467–68.

Thus the present case, as was *Zo-*

dren attend public school or private—strongly indicates a *secular* effect).

**7.** *See also Mueller,* 463 U.S. at 399, 103 S.Ct. at 3069 (because public funds become available to sectarian schools "only as a result of numerous private choices of individual parents of school-age children," such a program is distinguished from other programs which involve "the direct transmission of assistance from the State to the schools themselves" in violation of the Establishment Clause).

*brest*, is distinguishable from those cases [8] where *direct* grants of aid from the government "relieved sectarian schools of costs they otherwise would have borne in educating their students[,]" *id.*, 509 U.S. at 12, 113 S.Ct. at 2468—"this kind of direct aid is indistinguishable from the provision of a direct cash subsidy to the religious school." *Ball*, 473 U.S. at 395, 105 S.Ct. at 3229. Here, "[t]he extension of aid to the [Russmans], however, does not amount to 'an impermissible "direct subsidy"' of [St. Brigid's]." *Zobrest*, 509 U.S. at 12, 113 S.Ct. at 2468–69 (quoting *Witters*, 474 U.S. at 487, 106 S.Ct. at 751). "Handicapped children, not sectarian schools, are the primary beneficiaries of the IDEA; to the extent sectarian schools benefit at all from the IDEA, they are only incidental beneficiaries." *Id.*, 509 U.S. at 12, 113 S.Ct. at 2469.

▮ The Supreme Court also distinguished *Zobrest* by recognizing that "the task of a sign-language interpreter seems ... quite different from that of a teacher or guidance counselor" and, moreover, that "the Establishment Clause lays down no absolute bar to the placing of a public employee in a sectarian school." *Id.*, 509 U.S. at 13, 113 S.Ct. at 2469.[9] This distinction focused on the "parents['] hav[ing] chosen of their own free will to place [their child] in a pervasively sectarian environment[,] [and that] [t]he sign-language interpreter they have requested *will neither add to nor subtract from that environment*, and hence the provision of such assistance is not barred by the Establishment Clause." *Id.*, 509 U.S. at 13, 113 S.Ct. at 2469 (emphasis added)[10]. In at least one recent case, *K.R. v. Anderson Community School Corp.* 887 F.Supp. 1217, 1228–29 (S.D.Ind., 1995), the holding of *Zobrest* was extended to allow the provision of an "instructional assistant" at a private parochial school.[11]

▮ Thus, because the services set forth in Colleen's IEP are to be provided through a "general program that is in no way skewed towards religion[,]" under which "no funds traceable to the government ever find their way into sectarian schools' coffers[,]" *id.*, 509

8. *E.g., Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975) *School Dist. of Grand Rapids v. Ball*, 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985).

9. The Supreme Court has "made clear that 'the provision of health services to all schoolchildren—public and nonpublic—does not have the primary effect of aiding religion,' even when those services are provided within sectarian schools." *Zobrest*, 509 U.S. at 13, n. 10, 113 S.Ct. at 2469, n. 10 (quoting *Wolman v. Walter*, 433 U.S. 229, 242, 97 S.Ct. 2593, 2602, 53 L.Ed.2d 714 (1977)).

10. Rather than basing its holding upon a determination that, "[t]he sign-language interpreter ... will neither add to nor subtract from [the sectarian] environment," the Supreme Court offered this statement as part of its second reason for distinguishing the *Zobrest* case from *Meek* and *Ball*. The holding in *Zobrest* is primarily founded upon: (1) a recognition that the aid is dispensed not to sectarian schools but to individual handicapped children: and (2) that the choice to enroll in a sectarian school is that of the child or the child's parents.

Thus, notwithstanding the public employee's physical presence in a sectarian school, assisting in religious education, the Supreme Court held such aid to be constitutionally permissible, despite the fact that this employee would "convey[] religious messages." *Zobrest*, 509 U.S. at 18–20, 113 S.Ct. at 2472 (Blackmun, J. dissenting) ("A

state-employed sign-language interpreter would be required to communicate the material covered in religion class, the nominally secular subjects that are taught from a religious perspective, and the daily Masses at which [the sectarian school] encourages attendance for Catholic students. In an environment so pervaded by discussions of the divine, the interpreter's every gesture would be infused with religious significance."); *see also id.*, 509 U.S. at 10–14, 113 S.Ct. at 2468–69.

11. The court in *Anderson Community School* focused on the IDEA's requirement that a student at a private school, in need of a particular benefit which can only be meaningfully provided in-class or on-site, must "receive a benefit comparable to the benefit she would receive if she attended public school ... [and such benefit] must be provided ... at her private school." *Anderson Community School*, 887 F.Supp. at 1221 (citing 34 C.F.R. § 76.654(a)).

34 C.F.R. § 76.654(a) provides:
Comparable benefits. The program benefits that a subgrantee [local school district] provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the subgrantee provides for students enrolled in public schools.
Thus, federal law would appear to moot any contention that New York State law does not require a school district to provide such benefits on-site at a private school.

U.S. at 10, 113 S.Ct. at 2467–68, any factual determination regarding the inclusion of religious instruction in the various academic classes at St. Brigid's is irrelevant to consideration of an Establishment Clause violation under *Zobrest.* The only determination remotely necessary under *Zobrest* is whether or not the provision of the consultant teacher and a teaching aide is a "neutral service": *i.e.,* will the modifications they make to facilitate Colleen's education *add or subtract* from the sectarian environment of St. Brigid's, or will they merely make it *accessible* to Colleen?

Although such services might add to the secular *educational* environment at St. Brigid's, there is no evidence that the provision of a consultant teacher and teaching aide would add to the *religious* environment at the school. Moreover, if the provision of these services at a public school would not add a religious element to that environment, those same services should not bring such an additional element to the sectarian environment at St. Brigid's. The record demonstrates that the defendant has come forth with no admissible evidence to show that such services will add or subtract from the sectarian environment of St. Brigid's, having focused instead on the presence of religious instruction in the various academic classes at St. Brigid's. Thus, the defendant has not demonstrated the existence of a material factual dispute regarding this issue.[12]

Accordingly, the Magistrate Judge's denial of plaintiff's motion for summary judgment is hereby reversed.

**IT IS SO ORDERED.**

---

[12.] This is an element essential to the District's defense of the case, and upon which the District will bear the burden of proof at trial. The allegation of an Establishment Clause violation is raised by the District in the face of plaintiff's otherwise undisputed entitlement to such benefits under the IDEA.