150 F.3d 219
 128 Ed. Law Rep. 576
 Colleen RUSSMAN, a child with disabilities, by her parents,
Patricia and Paul RUSSMAN, Plaintiff-Appellee,
v.
BOARD OF EDUCATION OF THE ENLARGED CITY SCHOOL DISTRICT OF
THE CITY OF WATERVLIET, Defendant-Appellant.
 Docket No. 95-7756.
 United States Court of Appeals,
Second Circuit.
 Submitted Sept. 22, 1997.
Decided July 24, 1998.
 
 Nancy M. Maurer, Disabilities Law Project, Albany Law School Clinic, Albany, New York, for Plaintiff-Appellee.
 Jay Worona, New York State School Boards Association, Albany, New York (Stephen F. Bailly, Hicks & Bailly, Albany, New York, of counsel) for Defendant-Appellant.
 Stephen J. McGrath, Assistant Corporation Counsel of the City of New York, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, of counsel) for Amicus Curiae the Board of Education of the City of New York.
 David Zwiebel, Director of Government Affairs & General Counsel, Agudath Israel of America, New York City, for Amicus Curiae Agudath Israel of America.
 Before: WINTER, Chief Judge, OAKES and WALKER, Circuit Judges.
 WINTER, Chief Judge:
 
 
 1
 In June 1996, we affirmed the late Judge Cholakis's grant of summary judgment in favor of Colleen Russman and her parents, holding that the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), required the Board of Education of the Enlarged City School District of Watervliet, New York (the "school district") to provide Colleen, a mentally retarded student, with a consultant teacher and teacher's aide on the premises of the private school in which she planned to enroll. See Russman v. Sobol, 85 F.3d 1050 (2d Cir.1996), vacated sub nom. Board of Educ. v. Russman, --- U.S. ----, 117 S.Ct. 2502, 138 L.Ed.2d 1008 (1997). In June 1997, however, the Supreme Court granted the school district's petition for a writ of certiorari, vacated our judgment, and remanded to us "for further consideration in light of the Individuals with Disabilities Education Act Amendments of 1997." Russman, --- U.S. at ---- - ----, 117 S.Ct. at 2502-03. Having considered letter briefs addressing the effect of the 1997 Amendments, we now hold that the IDEA as amended does not require a school district to provide on-site special-education services to a disabled child voluntarily enrolled in private school. Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 2
 We assume familiarity with the facts described in our prior decision, Russman v. Sobol, 85 F.3d 1050 (2d Cir.1996), vacated sub nom. Board of Educ. v. Russman, --- U.S. ----, 117 S.Ct. 2502, 138 L.Ed.2d 1008 (1997), and in the two opinions of the district court, Russman v. Board of Educ., 945 F.Supp. 37 (N.D.N.Y.1995); Russman v. Board of Educ., No. 93-CV-905, 1994 WL 903488 (N.D.N.Y. June 24, 1994). We therefore give only a brief sketch of the facts and procedural history here.
 
 
 3
 Colleen Russman, now sixteen years old, has been identified since 1986 as mentally retarded. Under her Individualized Educational Program ("IEP"), Colleen is to receive the assistance of a consultant teacher and a teaching aide, as well as occupational and speech therapy, in order to allow her to be "mainstreamed." The parties agree that Colleen is entitled to receive these educational services but disagree over where they are to be provided. The Russmans contend that the school district must provide services to Colleen on the premises of St. Brigid's Regional Catholic School ("St. Brigid's"), a sectarian school in which the Russmans plan to enroll Colleen. The school district maintains that it is not required to provide on-site special-education services to a student enrolled in a private school and chooses not to do so in this case.
 
 
 4
 In our prior decision, we upheld Judge Cholakis's grant of summary judgment in favor of the Russmans. We first rejected the school district's claim that the Establishment Clause prohibited the implementation of Colleen's IEP on the premises of St. Brigid's and held that under Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), the services required by Colleen could be constitutionally provided there. See Russman, 85 F.3d at 1053-54. Second, we held that the school district was statutorily required to do so. Because the IDEA and its accompanying regulations "require that necessary services be provided to disabled private school students according to their needs rather than the name of their school," id. at 1056, and because there had been no showing by the school district that providing Colleen services at St. Brigid's would cost more than providing them on public school grounds, we held that the school district had to provide Colleen with the consultant and teacher's aide on-site. See id. at 1057.
 
 
 5
 As noted, the Supreme Court granted the school district's petition for a writ of certiorari, vacated our judgment, and remanded to us "for further consideration in light of the Individuals with Disabilities Education Act Amendments of 1997." Russman, --- U.S. at ---- - ----, 117 S.Ct. at 2502-03.
 
 DISCUSSION
 
 6
 The amended IDEA provides in pertinent part:
 
 
 7
 (i) In generalTo the extent consistent with the number and location of children with disabilities in the State who are enrolled by their parents in private elementary and secondary schools, provision is made for the participation of those children in the program assisted or carried out under this subchapter by providing for such children special education and related services in accordance with the following requirements, unless the Secretary has arranged for services to those children under subsection (f) of this section:
 
 
 8
 (I) Amounts expended for the provision of those services by a local educational agency shall be equal to a proportionate amount of Federal funds made available under this subchapter.
 
 
 9
 (II) Such services may be provided to children with disabilities on the premises of private, including parochial, schools, to the extent consistent with law.
 
 
 10
 20 U.S.C. § 1412(a)(10)(A).
 
 
 11
 In the school district's view of the amended statute, a participating state must allocate a proportionate share of federal money to disabled students voluntarily enrolled in private schools but is not required to provide on-site services to such students. Because the federal funds received by a state under the IDEA are only a fraction of the cost of educating a state's disabled children, see Brief for the United States as Amicus Curiae at 2, K.R. v. Anderson Community Sch. Corp., --- U.S. ----, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997) (No. 96-323) children choosing to attend private school would, under the district's view, be entitled as a group to only a proportionate amount of that fraction. The district argues in addition that whatever services a district is obligated to provide to a disabled student voluntarily enrolled in private school need not be provided on the private school's premises.
 
 
 12
 We agree with the school district. The amended IDEA "specifies that the total amount of money that must be spent to provide special education and related services to children in the State with disabilities who have been placed by their parents in private schools is limited to a proportional amount ... of the Federal funds available under part B." H.R.Rep. No. 105-95, at 92-93 (1997), reprinted in 1997 U.S.C.C.A.N. 78, 90. States are, therefore, not obligated under the statute to expend their own funds on disabled children who have voluntarily enrolled in private school. Accord Fowler v. Unified Sch. Dist. No. 259, 128 F.3d 1431, 1439 (10th Cir.1997); K.R. v. Anderson Community Sch. Corp., 125 F.3d 1017, 1019 (7th Cir.1997). Rather, states are required to provide to children voluntarily enrolled in private schools only those services that can be purchased with a proportionate amount of the federal funds received under the program. Accord Fowler, 128 F.3d at 1436-37; Cefalu v. East Baton Rouge Parish Sch. Bd., 117 F.3d 231, 232 (5th Cir.1997).
 
 
 13
 Assuming that Colleen is individually entitled to a proportionate share of federal funds to pay the teacher's and aide's salaries,[1] we turn to the question of whether such services must be provided on-site at the private school. It is clear, both under Zobrest and the amended IDEA, that the school district is permitted to provide Colleen with services on-site at St. Brigid's. See Russman, 85 F.3d at 1053-54, vacated on other grounds, --- U.S. ----, 117 S.Ct. 2502, 138 L.Ed.2d 1008 (1997).[2] Less clear, however, is whether a school district is required to do so. In support of its claim that on-site services need not be provided, the school district relies upon the provision in the IDEA entitled "Payment for education of children enrolled in private schools without consent of or referral by the public agency." It states in pertinent part:
 
 
 14
 (i) In general
 
 
 15
 Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.
 
 
 16
 20 U.S.C. § 1412(a)(10)(C).
 
 
 17
 The school district argues that the quoted statement that a local educational agency ("LEA") need not pay for the education of a "child with a disability at a private school or facility" means that an LEA need not provide services on-site at the private school. Although we ultimately agree with the district, we find its interpretation of Section 1412(a)(10)(C)(i) unpersuasive. That section is expressly made subject to the provisions contained in subparagraph (A), the provision of the statute quoted at length earlier in this opinion. The two sections read together mean simply that an LEA need not pay for a disabled child's private-school tuition if her parents have chosen to enroll her there despite the LEA's ability and willingness to provide the child with a free appropriate education at a public school. Rather, the LEA is required only to expend a proportionate share of the federal money received under the IDEA on behalf of disabled children voluntarily enrolled in private schools. As for where the services must be provided, Section 1412(a)(10)(C)(i) is silent.
 
 
 18
 Nevertheless, we hold that the statute does not require a school district to provide on-site services to a disabled child who is voluntarily enrolled in private school. The only portion of the statute that expressly addresses the issue states that "[s]uch services may be provided to children with disabilities on the premises of private, including parochial, schools, to the extent consistent with law." 20 U.S.C. § 1412(10)(A)(i)(II) (emphasis added). This language is permissive rather than mandatory. When coupled with the legislative history, which states that the amended IDEA "includes an obligation on a State to require LEAs ... to the extent consistent with law, at State discretion, [to] provide services on the premises of private, including parochial, schools," H.R.Rep. No. 105-95, at 91 (1997), reprinted in 1997 U.S.C.C.A.N. 78, 89 (emphasis added), the IDEA cannot be read to require school districts to provide on-site services to disabled children voluntarily enrolled in private schools. To the contrary, school districts have discretion to determine whether to provide such services on-site. As a result, the school district has no obligation under the IDEA to provide Colleen with a consultant teacher and teacher's aide at St. Brigid's.
 
 
 19
 Our original opinion noted that our disposition of the case obviated the need for an examination of the Russmans' Free Exercise and state law claims. See Russman, 85 F.3d at 1057, vacated on other grounds, --- U.S. ----, 117 S.Ct. 2502, 138 L.Ed.2d 1008 (1997). Because of our present disposition of the matter, their additional claims must now be addressed. On remand, therefore, the district court should determine whether the Free Exercise Clause of the First Amendment or New York State Education Law § 3602-c requires the school district to provide Colleen with a consultant teacher and teacher's aide on-site at St. Brigid's.
 
 
 20
 For the foregoing reasons, the decision of the district court is reversed and the case is remanded for further proceedings consistent with this opinion. Each party shall bear their own costs and attorneys' fees.
 
 
 
 [1]
 There is nothing in the record indicating how much federal money New York receives under the IDEA, what is the proportionate amount to which disabled children in the state are entitled, or how much it would cost to pay the consultant teacher's and the aide's salaries. In addition, under the IDEA "it is not clear whether the local educational agency must spend a proportionate share of Federal funds on all special education and related services needed by private school students, or whether it has discretion to determine which services it will provide to which students." Fowler, 128 F.3d at 1437. Thus, the question of where Colleen's services are to be provided may turn out to be of secondary importance. Unless Colleen is entitled under the program to sufficient federal funds to pay the salaries of the consultant teacher and teacher's aide provided for in her IEP, the question of whether the services are delivered to her on-site or off-site never arises
 
 
 [2]
 The school district has since abandoned the argument pressed earlier, namely that the Establishment Clause bars it from providing services to Colleen at St. Brigid's