**Mark KNAUST, Barbara Knaust and Herman Karl Knaust, II, Plaintiffs–Appellants,**

v.

**THE CITY OF KINGSTON, New York, The City of Kingston Planning Board, The City of Kingston Local Development Corporation and The United States Department of Commerce, for and through the Economic Development Administration, Wilbur F. Hawkins, Deputy Assistant Secretary for Economic Development, Defendants–Appellees.**

**Docket 97–6287.**

United States Court of Appeals, Second Circuit.

Argued May 13, 1998.

Decided Sept. 4, 1998.

John J. Privitera, McNamee, Lochner, Titus & Williams, Albany, New York, for Plaintiffs–Appellants.

Michael J. Moore, Ward, Sommer & Moore, LLC, Albany, New York (Richard Riseley, Dean S. Sommer and Deborah L. Jones, Ward, Sommer & Moore, LLC, Albany, New York, on the brief), for Defendants–Appellees The City of Kingston, City of Kingston Planning Board and City of Kingston Local Development Corporation.

Russell W. Craig, Special Assistant United States Attorney, Washington, DC (Thomas Maroney, United States Attorney for the Northern District of New York, Albany, New

York), for Defendant–Appellee United States Department of Commerce.

Before: FEINBERG and WALKER, Circuit Judges, and SHADUR,* Senior District Judge.

SHADUR, Senior District Judge.

Mark Knaust, Barbara Knaust and Herman Karl Knaust, II (collectively "Knausts") have taken an interlocutory appeal from the October 10, 1997 order of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *District Judge* ) that (1) denied Knausts' motion for a preliminary injunction, (2) denied Knausts' Fed.R.Civ.P. ("Rule") 56 motion for summary judgment on certain of their claims against the United States Department of Commerce ("Department") and (3) granted Department's cross-motion for summary judgment, dismissing all of Knausts' claims against Department. For the reasons set forth below, we dismiss the appeal as moot and vacate the district court's order.

### Background Facts

On September 20, 1995 the Economic Development Administration, a Department agency, approved a $1,860,000 grant under the Public Works and Economic Development Act of 1965 as amended (42 U.S.C. §§ 3121–3137) to the City of Kingston, its Planning Board and its Local Development Corporation (collectively "Kingston Defendants") to provide partial funding for the construction of the Kingston Business Park ("Park") on a 107 acre parcel of property adjacent to and topographically above Knausts' property. Knausts opposed the project, arguing that it posed an imminent threat to the environment. More specifically, they maintained that Park's storm water system would contaminate a subterranean water source on their property and would thus interfere with their professed plans to revive an abandoned commercial mushroom farm operated on the property 30 years earlier.

On April 15, 1996 Knausts filed their Complaint that (1) charged Department with violations of the National Environmental Policy Act ("NEPA," 42 U.S.C. §§ 4321–4370e) and the Coastal Zone Management Act (16 U.S.C. §§ 1451–1465), (2) asserted claims against Kingston Defendants for their alleged violations of 42 U.S.C. § 1983 and of New York environmental law and (3) advanced common law nuisance claims against all defendants. Knausts also sought temporary and preliminary injunctive relief to enjoin the federal funding and the Park's construction. One month later the district court denied Knausts' request for a temporary restraining order, leaving the request for preliminary injunctive relief still pending.

Next Knausts moved for summary judgment and a permanent injunction on their NEPA claim against Department, which in turn responded with its own Rule 56 motion seeking to dismiss all of the claims pending against it. During the 15 months that elapsed between those filings and their disposition, the construction of Park's infrastructure was completed and all federal funds allocated to the project were disbursed and expended.

On October 10, 1997 the district court entered the order described at the outset of this opinion, and this appeal ensued. Shortly before we heard oral argument Department and Kingston Defendants moved to dismiss the appeal on mootness grounds. Those motions were fully briefed and were consolidated with Knausts' interlocutory appeal.

### Mootness

As a threshold jurisdictional matter, we must decide whether intervening events have rendered Knausts' request for injunctive relief moot, for "Article III of the Constitution limits this Court to consideration of appeals involving a live case or controversy" (*Agee v. Paramount Communications Inc.*, 114 F.3d 395, 398 (2d Cir.1997)). As *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (internal

* The Honorable Milton I. Shadur, of the United States District Court for the Northern District of Illinois, sitting by designation.

citations and quotation marks omitted) makes clear:

> This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed.... The parties must continue to have a personal stake in the outcome of the lawsuit.

■ It cannot be gainsaid that the preliminary injunction aspect of the case—the springboard for and sole subject of this appeal—no longer presents a live controversy and is therefore moot. As we said in *Bank of New York Co. v. Northeast Bancorp, Inc.,* 9 F.3d 1065, 1067 (2d Cir.1993):

> In general, an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined.[1]

Accord, *Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1172 (8th Cir.1994). That certainly is the case here: Park's construction was finished in July 1997, the final disbursement of the federal funds was made in September of that year, and there are no pending applications for additional federal financing. Because this appeal thus seeks to enjoin the future occurrence of events that are already in the past, we lack appellate jurisdiction.

Our conclusion is strongly buttressed by *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.,* 48 F.3d 618, 621 (1st Cir.1995), which confronted a similar factual scenario and also dismissed the appeal, stating in language that might well have been written for this case:

> No mandate that we might issue can turn back the pages of the calendar and either stop the commission of the allegedly infringing act or fully palliate its effects. Though federal courts possess great authority, they lack the power, once a bell has been rung, to unring it. In short, no justiciable controversy exists because this appeal can no longer serve the intended harm-preventing function, or, put another

way, this court, within the isthmian confines of an interlocutory appeal from an order refusing to restrain a now completed act, has no effective relief to offer.

There are to be sure situations in which otherwise moot cases may nevertheless remain justiciable if they are "capable of repetition, yet evading review" (*Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)). But that long-recognized exception to mootness principles is severely circumscribed. As *Spencer v. Kemna,* —— U.S. ——, ——, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998) (internal citations, quotation marks and brackets omitted) has reconfirmed earlier this year:

> The capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.

Neither of those conditions is satisfied here. First, the elapsed time that gave rise to mootness here was simply a product of an extended delay before the district court ruled, not some inherent limitation on the time interval between the receipt of a grant award and the disbursement of funds that would necessarily inhibit judicial review. Moreover and independently, nothing has been shown to suggest any "reasonable expectation" that Knausts will confront any like situation in the future. Not only are there no pending applications by Kingston Defendants for additional federal funding, but no such applications are planned.

Nor will it suffice to hypothesize the possibility that at some future time, under circumstances that could only be guessed at now, the parties could theoretically become embroiled in a like controversy once again. As *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam) teaches:

---

1. Nor is this a situation in which restoration of the status quo—a potential exception to the general rule of mootness mentioned (but not decided upon) in *Bank of New York*—is a feasible possibility.

The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the [capable of repetition, yet evading review] test. . . .

In sum, Knausts cannot stave off the required dismissal by invoking that limited exception to the established principles of mootness.

This disposition does not of course terminate the litigation. Knausts may still seek, and may perhaps be successful in obtaining, other relief for their claimed harms (a matter on which this Court suggests no position). But only as and when such other relief is granted or denied in a final appealable order will the case become ripe for proper appellate review.

### Avoiding Mootness

Although we have thus resolved this appeal, the fact that we have had to do so without confronting its substantive merits constrains us to add some thoughts on the subject of the extended delay that has produced that outcome. We hasten to say that the record does not disclose (nor do we question) the reasons that the district court decision had such a long gestation period,[2] so what is said here is intended to address general considerations of timeliness rather than suggesting any case-specific problem.

District court calendar management is by its very nature a difficult undertaking. District court judges are compelled to deal with caseloads (a mix of both civil and criminal cases) numbering in the hundreds at any point in time. We recognize that such burdens are not readily controllable, because neither the demand (the number and complexity of case filings) nor the supply (the number of judges handling them) is deter-

mined by the judiciary itself. But despite such large caseloads, when problems of an emergent nature are presented to the federal judiciary, they must be responded to with whatever speed each situation may require. Inordinate delays must be shunned, particularly when litigants and their lawyers have such limited means for seeking relief in the face of an unexplained passage of time before a long-awaited decision is reached.

■ Although we are not in a position to evaluate the specific circumstances that may have occasioned the delay in this case, it does exemplify the problem—a litigant attempts to obtain injunctive relief, the district court is delayed in reaching a decision on the injunction, and then the action sought to be enjoined is completed while the decision on the injunctive relief remains open. Such a sequence of events, combined with the mootness doctrine, thwarts any effort to have an ultimate adverse decision on the merits considered by a reviewing court. We therefore commend to our colleagues on the district court that they must decide preliminary motions promptly or establish procedures under which, if for any reason they themselves are unable to decide any motion for preliminary injunctive relief promptly, they will take the initiative to inquire of the litigants whether timeliness is a matter of concern so that they may then act accordingly.

### Conclusion

Because the subject matter of this appeal no longer presents a live controversy, this Court lacks appellate jurisdiction to decide the matter. Accordingly we GRANT Department's and Kingston Defendants' respective motions to dismiss this appeal and therefore DISMISS the appeal as moot. We also

---

2. In that respect we have noted from the Administrative Office's annual Judicial Caseload Profile Report for the last complete fiscal year (ended September 30, 1997) that in the Northern District of New York—not surprisingly, given the existence of just five authorized judgeships coupled with the fact that at substantially all times during the five immediately preceding fiscal years there were either two or three unfilled vacancies, while the entire fiscal 1997 year reflected one unfilled vacancy:

   1. As of last September 30 there were 650 pending cases per authorized judgeship

(which, despite the voluntary assumption of duties by two senior judges, represents a substantially higher average number for the four active judges). That number exceeds the national average for all district judges by nearly 40%.

   2. Predictably the median time for bringing a civil case from filing to trial was then also about 40% higher than the national average, with the number of civil cases over three years old understandably being more than 80% higher than the national average.

VACATE the district court's order that is the subject of this appeal (see *Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (per curiam)), without prejudice to the district court's consideration of the renewed entry of an order consistent with this opinion.