**Colleen RUSSMAN, a child with disabilities, by her parents, Patricia and Paul RUSSMAN, Plaintiff–Appellant,**

v.

**THE BOARD OF EDUCATION OF THE ENLARGED CITY SCHOOL DISTRICT OF THE CITY OF WATERVLIET, Defendant–Appellee.**

Docket No. 00–7612.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 2000.

Decided Aug. 03, 2001.

116

Nancy M. Maurer, Civil Rights and Disabilities Law Project, Albany Law School, Albany, NY, for plaintiff-appellant Russman.

Jay Worona, New York State School Boards Association, Albany, NY, (Stephen F. Bailly, Hicks & Bailly, Pilar Sokol, on the brief), for defendant-appellee.

James R. Sheldon, Jr., Neighborhood Legal Services, Buffalo, NY, (Ronald M. Hager, Jonathan Feldman, Public Interest Law Office of Rochester, Rochester, NY, on the brief), for amicus curiae Western New York Disability Law Coalition.

David Zwiebel, Agudath Israel of America, New York, NY, (Eytan A. Kobre, on the brief), for amicus curiae Agudath Israel of America.

Before WALKER, Chief Judge, POOLER, Circuit Judge, and HALL, District Judge.*

JOHN M. WALKER, Jr., Chief Judge:

Plaintiff Colleen Russman appeals from a judgment of the United States District Court for the Northern District of New York (Ralph W. Smith, Jr., *Magistrate Judge*) granting a motion for summary judgment by defendant Board of Education of the Enlarged City School District of the City of Watervliet ("the Board") and dismissing the complaint. On appeal, Russman argues that the Free Exercise Clause of the First Amendment to the United States Constitution and section 3602–c of the New York Education Law require the Board to fund on-site special-education services for Colleen at a private parochial school. We conclude that the case has become moot and accordingly vacate the district court's grant of summary judgment on the merits and remand with direction to dismiss the case for lack of jurisdiction.

## BACKGROUND

Because this case has been here before, our discussion of the facts and proceedings presumes some familiarity with our prior decisions. *See Russman v. Bd. of Educ.*, 150 F.3d 219 (2d Cir.1998) (*"Russman II"*); *Russman v. Sobol*, 85 F.3d 1050 (2d Cir.1996) (*"Russman I"*), *vacated sub nom Bd. of Educ. v. Russman*, 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1008 (1997).

In 1991, the Russmans notified the Board that they intended to enroll their daughter Colleen, who is mentally retarded, in a local parochial school, St. Brigid's Regional Catholic School ("St.Brigid's"), and requested that the Board fund on-site

* The Honorable Janet C. Hall of the United States District Court for the District of Connecticut, sitting by designation.

special-education services at St. Brigid's. The Board declined to do so. Because of the Board's refusal and her parents' inability to pay for those services, Colleen has been enrolled in the Watervliet public schools throughout this litigation. Under an Individualized Education Program ("IEP") prepared pursuant to N.Y. Educ. Law § 4401–a, Colleen attended classes with non-disabled students with the assistance of aides and therapists. At the end of the 1999–2000 school year, Colleen received an "IEP diploma" from Watervliet High School certifying completion of her IEP. Since then, Colleen has not been enrolled in any school, public or parochial, and her parents have not indicated any intention to re-enroll her in such a school.

On being denied their request for on-site services at St. Brigid's, the Russmans pursued available administrative remedies without success and then brought suit on Colleen's behalf in district court on July 8, 1993. They claimed that the Board was obligated by the First Amendment of the United States Constitution, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–87, and New York state law to provide special-education services on site at St. Brigid's. The Board responded in a summary judgment motion not only that it was not required to provide such services, but also that the First Amendment's Establishment Clause prohibited it from doing so.

The lawsuit has since made two appearances in this court and one in the United States Supreme Court. Earlier iterations of the case have settled the following points: (1) the Establishment Clause of the First Amendment does not bar the Board from providing on-site special-education services at parochial schools, see *Russman I*, 85 F.3d at 1053–54, and (2) the IDEA does not mandate that the Board provide such services, see *Russman*

*II*, 150 F.3d at 222. In *Russman II*, we expressly left to the district court on remand the task of deciding whether the Free Exercise Clause of the First Amendment or section 3602–c of the New York Education Law mandates on-site provision of the special-education services. *Id.* The district court concluded that neither provision does so and granted the Board's motion for summary judgment on the merits. The Russmans appealed.

## DISCUSSION

Because we conclude that the case is moot, we are no longer faced with a justiciable controversy and therefore do not address the merits of the case.

### I. Mootness

The federal courts are courts of limited jurisdiction, their powers circumscribed at their most basic level by the terms of Article III of the Constitution, which states that they may hear only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. Although the "case or controversy" requirement has itself been a fertile ground for controversy through the years, at its uncontroverted core lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.

The requisite dispute must persist throughout the litigation—in a case such as this, from first filing in the district court through its many ascents and descents of the appellate ladder—and if the dispute should dissolve at any time due to a change in circumstances, the case becomes moot. See *DeFunis v. Odegaard*, 416 U.S. 312, 316–17, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam); *Fox v. Bd. of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 139–40 & n. 2 (2d Cir.1994). Whenever mootness occurs, the court—whether trial, appellate, or Supreme—los-

es jurisdiction over the suit, which therefore must be dismissed.[1]  *See, e.g., Fox,* 42 F.3d at 140.

■■■ The Supreme Court has recognized an exception, however, where the dispute is "capable of repetition, yet evading review."  *S. Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911).  The capable-of-repetition principle applies only "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal quotation marks omitted). A recurrent dispute will "evade review" if it could not be entirely litigated before again becoming moot, including prosecution of appeals as far as the Supreme Court.  *See, e.g., Honig v. Doe,* 484 U.S. 305, 322–23, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (noting the likely mooting "by the time review can be had in this Court" of any future lawsuit brought by plaintiff). Given these strictures, it has been said that the exception "applies only in exceptional situations,"  *Spencer,* 523 U.S. at 17, 118 S.Ct. 978, and is "severely circumscribed,"  *Knaust v. City of Kingston,* 157 F.3d 86, 88 (2d Cir.1998).  *See also Muhammad v. City of N.Y. Dep't of Corr.,* 126 F.3d 119, 123 (2d Cir.1997) (holding that the exception is "applied 'only in exceptional situations' ").

■■■ Mootness is a recurring phenomenon in students' suits to vindicate constitutional rights associated with the conditions of their education: a student's graduation ends his individual interest in the conditions of education at his former school. *See, e.g., Bd. of Sch. Comm'rs of Indianapolis v. Jacobs,* 420 U.S. 128, 129–30, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (per curiam);  *Altman v. Bedford Cent. Sch. Dist.,* 245 F.3d 49, 74 (2d Cir.2001), *petition for cert. filed,* 70 U.S.L.W. 3038 (U.S. June 25, 2001) (No. 00–1932);  *Fox,* 42 F.3d at 140; *Cook v. Colgate Univ.,* 992 F.2d 17, 19 (2d Cir.1993).  As the student's interest evaporates, so does the requisite case or controversy.  Moreover, the finality of graduation means that "in the absence of a class action, the 'capable of repetition, yet evading review' exception is not available when the issue is students' rights and the complaining students have graduated from the defendant institution."  *Altman,* 245 F.3d at 71.

■■■ In the present case, Colleen has received her IEP diploma from Watervliet High School.  She is no longer attending school, public or parochial, and her parents have expressed no intention to re-enroll her in the future.  For these reasons, a favorable decision from this court would not immediately inure to her benefit, rendering the case moot.  *See United States v. Constr. Prods. Research, Inc.,* 73 F.3d 464, 469 (2d Cir.1996).

The Russmans nevertheless urge that the case is "capable of repetition, yet evading review" because an IEP diploma, unlike an ordinary high-school diploma, does not terminate a recipient's entitlement to a free appropriate public education ("FAPE").  A school district may "award a high school [IEP] diploma ... upon a finding that [a] student has achieved the educational goals ... specified in the student's current [IEP]."  N.Y. Comp.Codes R. & Regs. tit. 8, § 100.9(c).  The IEP diploma

---

1.  The fate of decisions rendered below, on the other hand, remains an open question after an appeal has been found to be moot, as we discuss in Part II, below.

does not mean that the student has graduated in the traditional sense, however:

> its recipient shall continue to be eligible to attend the public schools of the school district in which the student resides without the payment of tuition until the student has earned a high school diploma or until the end of the school year of such student's 21st birthday, whichever is earlier.

N.Y. Comp.Codes R. & Regs. tit. 8, § 100.9(e); *see also* N.Y. Comp.Codes R. & Regs. tit. 8, § 100.5(b)(7)(iii) (stating that "[e]arning ... an [IEP] diploma shall not be deemed to be equivalent to receipt of a high school diploma ... and shall not terminate a student's entitlement to a free public education"). Colleen is thus entitled to additional public schooling until she graduates or completes the school year that includes her twenty-first birthday. *See* N.Y. Comp.Codes R. & Regs. tit. 8, § 100.9(e). If she were to resume her schooling, the Russmans argue, she could (1) return to a parochial school, (2) request public special-education funds, and (3) be denied those funds by the Board. Therefore, they contend, the case is "capable of repetition ." They further argue that, in such event, the Board's denial would "evade review" because Colleen could not challenge the denial, including prosecution of all necessary appeals, before she would become statutorily ineligible for those funds.

The Russmans argue that the Supreme Court's decision in *Honig v. Doe* is controlling. There, the plaintiff had been expelled from public school because of disruptive behavior associated with his handicap, and the expulsion was alleged to violate the IDEA's ancestor statute, the Education of the Handicapped Act. Although the Court found the case to be moot for one 24–year–old plaintiff, it found otherwise for 20–year–old plaintiff-

intervenor Jack Smith, because the harm that Smith complained of was "capable of repetition, yet evading review." Smith was not yet 21 and had not yet completed high school and thus, in California, was still eligible for a FAPE. Although Smith was no longer a resident of the defendant school district, the Court reasoned that, because he was still a resident of the state, he would benefit from the statewide injunction entered by the district court if he were to re-enroll in another district. *See Doe*, 484 U.S. at 318–20, 108 S.Ct. 592. Moreover, because his disruptive classroom behavior was "beyond his control," the Court was satisfied that he was likely to behave similarly in the future and subject himself to the same treatment in any school district in which he might enroll. *Id.* at 320, 108 S.Ct. 592. Finally, the Court found that the case would evade review because the defendant's proximity to the FAPE age limit meant that he could not challenge any eventual repetition before becoming ineligible for further education. *See id.* at 322–23, 108 S.Ct. 592.

▮▮▮▮ We believe that, unlike *Doe*, the present dispute is not sufficiently "capable of repetition." Although a plaintiff need not show a "demonstrated probability" of recurrence, there must be at least a "reasonable expectation" of repetition. *Id.* at 318 n. 6, 108 S.Ct. 592; *see also Spencer*, 523 U.S. at 17, 118 S.Ct. 978. To create a reasonable expectation of recurrence, repetition must be more than theoretically possible. "[M]ere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence." *Dennin v. Conn. Interscholastic Athletic Conference, Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (internal quotation marks omitted).

Here, instead of a reasonable expectation of repetition, the Russmans offer only surmise. Nothing in the record suggests that they will seek, intend to seek, or are even contemplating additional schooling for Colleen. In affidavits, briefs, and at oral argument, the most they have offered is that they would like the "option" of enrolling her in a parochial school with public special-education support, while conceding that they have "no immediate plans to enroll Colleen in a sectarian school." Although Colleen's legal eligibility for additional schooling means recurrence is theoretically possible, that is insufficient to support the requisite "reasonable expectation" of recurrence.

Finally, unlike the student in *Doe,* who was ultimately expelled from school, Colleen withdrew voluntarily after receiving her IEP diploma. We have no reason to believe that Colleen's withdrawal had anything to do with the defendant's conduct. Rather, the record suggests that Colleen withdrew because she had reached the anticipated end of her schooling: Colleen's 1998–99 IEP states under the heading "Adult Outcome Statement(s)" that "[Colleen] plans on achieving an IEP diploma and being employed with support services provided by community agencies," implying that the IEP diploma was, in effect, the end of school, leading to work.

Mindful that the "capable of repetition" principle "applies only in exceptional situations," *Spencer,* 523 U.S. at 17, 118 S.Ct. 978, and is "severely circumscribed," *Knaust,* 157 F.3d at 88, we conclude that this is not an appropriate case for its application.

## II. Vacatur

■■■ Having decided that the case is moot, we must now decide whether to vacate the district court's judgment and thereby effectively deny it res judicata and precedential consequences. When a case is mooted on appeal, the appellate court is not automatically compelled to simply dismiss the appeal: it retains jurisdiction to vacate the district court's judgment and remand with direction to dismiss as moot. *See Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.,* 150 F.3d 149, 151 (2d Cir.1998).

■■■ Whether we vacate the district court's judgment or simply dismiss the appeal, leaving the district court's judgment intact, depends on the equities of the case; the appellant has no automatic right to vacatur. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *Tunick v. Safir,* 209 F.3d 67, 73 & n. 8 (2d Cir.2000). In the ordinary run of cases, however, courts have been liberal in granting vacatur. *See United States v. Munsingwear,* 340 U.S. 36, 39 & n. 2, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (holding that "[t]he established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss" and collecting cases); *Associated Gen. Contractors v. New Haven,* 41 F.3d 62, 67 (2d Cir.1994). The rationale for this practice is that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp,* 513 U.S. at 25, 115 S.Ct. 386. Absent a showing that the equities preponderate against vacatur, then, we will vacate and remand. *See id.* at 25, 29, 115 S.Ct. 386.

■■■ In considering whether vacatur is inappropriate, our primary concern is the fault of the parties in causing the appeal to become moot.[2] *See id.* at 26, 115

**2.** In some cases, the public value of settled precedent may also militate against vacatur.

S.Ct. 386 (noting "the emphasis on fault in our decisions"); *Dennin,* 94 F.3d at 101; *Associated Gen. Contractors,* 41 F.3d at 67; *Mfrs. Hanover Trust,* 11 F.3d at 383. In general, where the appellee has caused the case to become moot, we vacate the district court's judgment to prevent the appellee from insulating a favorable decision from appellate review. *See U.S. Bancorp,* 513 U.S. at 25, 115 S.Ct. 386; *Associated Gen. Contractors,* 41 F.3d at 67; *Penguin Books USA Inc. v. Walsh,* 929 F.2d 69, 73 (2d Cir.1991). On the other hand, where the appellant has caused the mootness, we may dismiss the appeal without vacating the district court's judgment. *See U.S. Bancorp,* 513 U.S. at 25, 115 S.Ct. 386; *Karcher v. May,* 484 U.S. 72, 82–83, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987); *Associated Gen. Contractors,* 41 F.3d at 67; *Mfrs. Hanover Trust,* 11 F.3d at 383.

> If we were to vacate where the party that lost in the district court has taken action to moot the controversy, the result would be to allow that party to eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won.

*Mfrs. Hanover Trust,* 11 F.3d at 383.

■ Nevertheless, not all actions taken by an appellant that cause mootness necessarily bar vacatur of the district court's judgment. For an appellant's conduct to constitute "forfeiture" of the benefit of vacatur, *see U.S. Bancorp,* 513 U.S.

at 25, 115 S.Ct. 386, we believe he must have intended that the appeal become moot, either in the sense that mootness was his purpose or that he knew or should have known that his conduct was substantially likely to moot the appeal. Accordingly, an appellant's conduct that is undertaken with an intent to escape the collateral consequences of the decision below may defeat vacatur. *See Nat'l Black Police Ass'n v. District of Columbia,* 108 F.3d 346, 354 (D.C.Cir.1997) (finding "manipulative intent" relevant); *cf. Dilley v. Gunn,* 64 F.3d 1365, 1371–72 & n. 6 (9th Cir.1995) (holding that if "appellant did not intend to avoid appellate review and to have the district court's order vacated, that factor may weigh equitably in favor of vacating the order"). Similarly, if the appellant's conduct of the litigation itself causes mootness, such as where he settles the case or fails to prosecute the appeal, the appellant must know that the appeal will be mooted and thus vacatur will usually be inappropriate. *See, e.g., U.S. Bancorp,* 513 U.S. at 25, 115 S.Ct. 386 (settlement); *Karcher,* 484 U.S. at 83, 108 S.Ct. 388 (failure to appeal); *Mfrs. Hanover Trust,* 11 F.3d at 385 (settlement).

■ However, we believe conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit, should not preclude our vacating the decision below. Such conduct cannot be said to be a "voluntary forfeiture" of the appellant's interest in vacatur, *U.S. Bancorp,* 513 U.S. at 24, 115 S.Ct.

*See, e.g., U.S. Bancorp,* 513 U.S. at 26–28, 115 S.Ct. 386. While this is an important consideration when a case becomes moot before the Supreme Court, it carries considerably less weight here. When imposed by the Supreme Court, vacatur eliminates an appellate precedent that would otherwise control decision on a contested question throughout the circuit. When a case becomes moot in one of the Courts of Appeals, on the other hand, it is usually a district court's decision that will be

vacated, and its precedential value is, of course, limited to only its persuasive effect. *But cf. Mfrs. Hanover Trust Co. v. Yanakas,* 11 F.3d 381, 382 (2d Cir.1993) (appellant sought vacatur of appellate decision when case was mooted after decision was rendered but before the mandate issued). Accordingly, the loss of the persuasive authority of the district court's judgment is of less compelling concern in the present case.

386, and we need not be worried that the party sought to "eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won." *Mfrs. Hanover Trust,* 11 F.3d at 383.

■ This is such a case. Although it became moot because appellants withdrew Colleen from school after she earned her IEP diploma, that withdrawal appears to have been the natural and apparently long-anticipated result of receiving that diploma, which in turn was the normal culmination of her education. The case therefore is little different from those in which an appellant has simply graduated from the defendant institution after the district court's judgment, and in which we usually have vacated the district court judgment. *See, e.g., Altman,* 245 F.3d at 70–71; *Cook,* 992 F.2d at 20. The Board has not suggested that Colleen's withdrawal had anything to do with the litigation, let alone that it was intended to moot the case. Indeed, the Russmans have vigorously pursued the appeal and argued against its mootness. Consequently, we cannot conclude that the Russmans "voluntarily forfeited [their] legal remedy, . . . thereby surrendering [their] claim to the equitable remedy of vacatur," *U.S. Bancorp,* 513 U.S. at 25, 115 S.Ct. 386, and we vacate the judgment below and remand with direction to dismiss the case as moot.

## CONCLUSION

Because the case is moot, the judgment of the district court is vacated, and the case is remanded with instruction to dismiss the case for lack of jurisdiction.